J-A24016-18

2019 PA Super 46

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
JOSEPH BERNARD FITZPATRICK, III :
:
Appellant : No. 259 MDA 2018

Appeal from the Judgment of Sentence Entered December 6, 2017
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0002534-2014

BEFORE: OTT, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.

OPINION BY McLAUGHLIN, J.: **FILED FEBRUARY 19, 2019**

Joseph Bernard Fitzpatrick III, appeals from the judgment of sentence
entered on December 6, 2017, following his conviction for first-degree
murder.[1] Fitzpatrick maintains that the trial court improperly admitted hearsay
evidence and erroneously applied the coordinate jurisdiction rule. We affirm.

The trial court aptly summarized the procedural history and facts of this
case as follows:

> On June 6, 2012, emergency personnel were dispatched to
> 2288 Old Forge Road in Chanceford Township, which is located in
> York County, Pennsylvania. EMTs found [Fitzpatrick] and his wife,
> Annemarie Fitzpatrick ["Victim"], down near the shore line of
> Muddy Creek. [The victim] was unresponsive, but EMTs were
> eventually able to get a pulse and she was transported to the
> hospital. A short time later, [the victim] was pronounced dead.
> Foul play was not suspected and the family began making
> arrangements; [the victim's] body was sent to the mortician for
> embalming.

---

[1] 18 Pa.C.S.A. § 2502(a).

Two days later, on June 8, 2012, the Pennsylvania State Police received a call from Rebekah Berry, who was employed by the same company as [the Victim]. Employees at Collectibles Insurance had found a note in [Victim's] day planner that they felt was "suspicious." The note said, "If something happens to me – JOE." It was dated June 6, 2012, and signed "A. Fitzpatrick." Upon request, Ms. Berry was given access to [the victim's] work email where she found an email from [the victim] to 'feltonfitz@gmail.com,' which was [Victim's] personal [email] account. The subject line of the email stated, "if something happens to me," and the body of the email read 'Joe and I are having marital problems. Last night we almost had an accident where a huge log fell on me. Joe was on the pile with the log and had me untying a tarp directly below." This email was sent June 6, 2012 at 10:30 a.m. Ms. Berry showed police the note and gave them access to [the victim's] email account.

After viewing the note and email, troopers contacted [Fitzpatrick] and asked if he would be willing to come in for an interview; [Fitzpatrick] agreed. [Fitzpatrick] was asked to again explain what occurred the night [the victim] died; he was never asked about the note or email.[2]

On June 9, 2012, approximately two days after [Victim's] death and after the body had been embalmed, an autopsy was conducted. Dr. Barbara Bollinger, the forensic pathologist, determined that the cause of death was drowning. Although she was not asked to opine on the manner of death, she did state that she thought the circumstances were "suspicious."

From the point the handwritten note and email were found, the investigation turned from an accident investigation into a

---

[2] Fitzpatrick made contradictory statements regarding the accident. Initially he stated to the Emergency Medical Technician on the scene that he found the victim under the ATV and tried to get her loose. However, he told one of the investigating troopers that he "searched for the Victim around the ATV and could not find her, and that it was not until he was later on the phone that [Fitzpatrick] saw Victim across the creek and then jumped backed into the water and retrieved her from across the creek." **Commonwealth v. Fitzpatrick**, 159 A.3d 562. 570 n.6 (Pa.Super. 2017), *appeal denied*, 173 A.3d 255 (Pa. 2017).

homicide investigation with the prime suspect being [Fitzpatrick]. Eventually, troopers discovered that [Fitzpatrick] was having a non-sexual affair with a woman named Jessica Georg, and was thinking of leaving his wife for her. When confronted, [Fitzpatrick] admitted to hiding [Victim's] phone from the police in an effort to hide this affair. Troopers also discovered that [Fitzpatrick] would gain approximately $1.7 million in life insurance if [Victim] were to die. After searching [Fitzpatrick's] work computer, troopers recovered two Google searches from around the time of [Victim's] death. The first search, done on June 1, 2012, searched for "life insurance review during contestability period." The second search, done on June 5, 2012, searched for "polygraph legal in which states." This all led to [Fitzpatrick's] arrest on March 6, 2014 – approximately a year and a half after [Victim's] death.

[Fitzpatrick] was formally arraigned on May 19, 2014, and Christopher A. Ferro, Esquire, entered his appearance on May 22, 2014. The case was assigned to the Honorable Gregory M. Snyder, who scheduled a pre-trial conference for August 18, 2014. After two extensions, [Fitzpatrick] filed on omnibus pre-trial motion on August 7, 2014. In that motion he raised several issues, however, because he only raises the issue of the hearsay note and email in his post-sentence motion we will not discuss the other issues. Specifically, [Fitzpatrick] argued that the handwritten note and email were inadmissible hearsay and the Commonwealth should not be allowed to present either as evidence. The Commonwealth countered that the note and email were hearsay but admissible under the state of mind exception. On October 20, 2014, Judge Snyder denied [Fitzpatrick's] request, and permitted the Commonwealth to present both the handwritten note and email.

The case was reassigned to the undersigned Judge due to Judge Snyder's reassignment into the Family Division. We listed the case for trial during the May term of trials.

[Fitzpatrick's] trial began on May 4, 2015. On May 13, 2015, [Fitzpatrick] was found guilty of First Degree Murder, and was sentenced to life imprisonment on the same day.

Trial Court Opinion ("TCO'), filed September 1, 2015, at 1-4.

Fitzpatrick filed a post-sentence motion, which the trial court granted and denied in part. The trial court denied Fitzpatrick's request for a new trial

but granted his motion for judgment of acquittal on the basis that the Commonwealth presented insufficient evidence for the first-degree murder conviction. The Commonwealth appealed and this Court reversed the order, concluding, "[T]he record, viewed in the light most favorable to the Commonwealth, reflects that the Commonwealth established Victim was unlawfully killed and that [Fitzpatrick] committed the murder with the requisite motive and intent." *Fitzpatrick*, 159 A.3d at 570. Following remand, the trial court reinstated Fitzpatrick's sentence of life imprisonment on December 6, 2017. He then filed a post-sentence motion, which the trial court denied. This timely appeal followed.

On appeal, Fitzpatrick raises three issues:

I.    Whether [Fitzpatrick] was denied rights granted to him by the United States Constitution and Pennsylvania Constitution when inadmissible hearsay, in the form of a note and email from [Fitzpatrick's] deceased wife, was admitted into evidence and used by the Commonwealth to secure a conviction on the charge of murder?

II.   Whether the improper admission of inadmissible hearsay was harmless error?

III.  Whether the post-trial motion judge is barred by the coordinate jurisdiction rule from correcting a mistake made by a prior judge during the pre-trial process, including, but not limited to the erroneous admission of hearsay evidence?

Fitzpatrick's Br. at 4 (suggested answers omitted).

Fitzpatrick's first two issues center on the trial court's evidentiary ruling regarding the admission into evidence of the note and the email. "An appellate court's standard of review of a trial court's evidentiary rulings, including

- 4 -

rulings on the admission of hearsay . . . is abuse of discretion." **Commonwealth v. Walter**, 93 A.3d 442, 449 (Pa. 2014). Thus, we will not disturb an evidentiary ruling unless "the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by evidence of record." **Commonwealth v. Cooper**, 941 A.2d 655, 667 (Pa. 2007) (citation omitted).

Here, the Commonwealth argues that while the letter and email are hearsay, they are admissible under the state-of-mind exception. **See** Commonwealth's Br. at 29. It claims that, "[t]he admitted evidence was relevant as to [Fitzpatrick's] motive, malice, and ill-will toward victim." **Id.** at 27.

In contrast, Fitzpatrick argues that "the note and e-mail are classic hearsay, and none of the carved-out exceptions" apply. Fitzpatrick's Br. at 21. Fitzpatrick cites **Commonwealth v. Levanduski**, 907 A.2d 3 (Pa.Super. 2006) (*en banc*), in support of his position. **Id.** at 24. He also notes that "[t]he Pennsylvania Supreme Court has already correctly asserted that the declarant's state of mind in a homicide prosecution is often times irrelevant." **Id.** at 24 (citing **Commonwealth v. Laich**, 777 A.2d 1057, 1060-61 (Pa. 2001)).

In **Levanduski**, the trial court admitted into evidence a letter written by the murder victim. The victim expressed in the letter that if he was killed, suspicions should be turned on his wife, Levanduski, and her paramour. **Id.**

at 10. The trial court reasoned that the letter was hearsay but was admissible to prove motive and the relationship between Levanduski and her paramour. *Id.* at 10-11. An *en banc* panel of this Court held that the letter was inadmissible under many exceptions to the hearsay rule, including the state-of-mind exception. The Court stated:

> Mr. Sandt's [the victim] state of mind was not a matter at issue in this case. Only when Mr. Sandt's letter is considered for the truth of the matter asserted, does it become relevant, that is material to and probative of [Levanduski's] intent or motive to kill Mr. Sandt. However, when considered for its substantive truth, although relevant, the letter is incompetent and therefore inadmissible.

*Id.* at 19 (citations omitted). The Court ultimately affirmed the judgment of sentence, concluding that the introduction of the letter was harmless error. *Id.* at 22.

Here, the trial court concluded that **Commonwealth v. Luster**, 71 A.3d 1029 (Pa.Super. 2013), supported the admission of both documents. N.T., Motions Hearing at 100. In **Luster**, the victim made statements expressing her fear of Luster and that he might do something bad to her. **Luster**, 71 A.3d at 1040. Our Supreme Court concluded, "[T]he victim's statement that she feared [Luster] and he was going to harm her is admissible because it shows Luster's ill will and malice toward the victim." **Id.** at 1041. The trial court here explained that both the note and the email were admissible under the state-of-mind exception because "[h]earsay that tends to prove motive or malice of

a defendant accused of murder of the first degree is admissible under the state of mind exception to hearsay." N.T., Motions Hearing at 106.

Hearsay is "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c). It is not admissible as evidence unless an exception to the hearsay rule applies. **See** Pa.R.E. 802; **see also** Pa.R.E. 802, 803, 803.1, and 804. One of the exceptions to the rule against hearsay is the state of mind exception:

> A statement of the declarant's then-existing state of mind (such as motive, intent or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.

Pa.R.E. 803(3).

"The admissibility of evidence relating to a victim's state of mind has been a subject of difference in this Court's recent decisions." **Commonwealth v. Moore**, 937 A.2d 1062, 1070-71 (Pa. 2007). In some instances, following **Luster**, our Courts have held that the state-of-mind exception applies to a murder victim's statement. **See Commonwealth v. Parker**, 104 A.3d 17, 29 (Pa.Super. 2014) (victim's questions to grandmother were admissible under state of mind exception); **see also Commonwealth v. Kunkle**, 79 A.3d 1173, 1185 (Pa.Super. 2013) (victim's statement that he was scared of defendant and if he died it would be defendant's fault was properly admitted as evidence based on state of mind exception). At other times, our appellate

Courts have held that the state-of-mind exception does not apply to a murder victim's statement. **See Commonwealth v. Green**, 76 A.3d 575, 582 (Pa.Super. 2013) (victim's statements that she was afraid of defendant and did not want "to go with him" were not admissible under state of mind exception); **see also Moore**, 937 A.2d at 1069 (victim's statement that defendant bullied him was not admissible under state of mind exception); **see also Commonwealth v. Thornton**, 431 A.2d 248, 251 (Pa. 1981) (victim's statement that he was fearful of defendant was not admissible under the state of mind exception).

We conclude that the note was admissible under the state-of-mind exception, but the email was not. The note was admissible over the hearsay objection because it tended to establish the victim's then-existing belief, *i.e.*, her state of mind, which was relevant to show the ill will that the victim perceived from Fitzpatrick, and, by implication, that their marriage was not going well. The note was thus not offered for the truth of the matter asserted and therefore was not hearsay. **See Commonwealth v. Puksar**, 740 A.2d 219, 225 (Pa. 1999) ("Statements are admissible to establish ill-will or motive where they are not being offered for the truth of the matter contained therein"); **see also Commonwealth v. Brown**, 648 A.2d 1177, 1182 (Pa. 1994) (stating out of court statement that is not offered for truth but "only for the fact that it was made," is not inadmissible hearsay).

In contrast, the victim's email was hearsay and not rendered admissible by the state-of-mind exception. The email did not relate to the victim's then-existing state of mind. Rather, the email was the victim's recount of her "memory or belief to prove the fact remembered," which is explicitly excluded by the state of mind exception. Pa.R.E. 803(3) (exception does not include "memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will"); **see also Levanduski**, 907 A.2d at 19 (concluding letter written by murder victim could not be considered a memory or belief under state of mind exception because it was not related to the victim's will). Therefore, we conclude that the trial court abused its discretion in admitting this evidence.

Although the trial court erroneously admitted the email into evidence, the admission was harmless error in light of the overwhelming evidence against Fitzpatrick. **See Green**, 76 A.3d at 582-83 (concluding harmless error of admission of victim's hearsay statement where there was sufficient and compelling evidence of defendant's guilt besides the hearsay evidence); **see also Levanduski**, 907 A.2d at 22 (concluding admission of victim's statement was harmless error where there was other overwhelming evidence of defendant's guilt).

"The Commonwealth bears the burden of establishing the harmlessness of the error." **Laich**, 777 A.2d at 1062. It must show at least one of the following:

(1) The error did not prejudice the defendant or the prejudice was *de minimus* or;

(2) The erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence or;

(3) The properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial affect of the error so insignificant by comparison that the error could not have contributed to the verdict.

*Id.* at 1062-63. The Commonwealth argues that its burden to establish the harmlessness of the admittance of the email is satisfied because "the evidence presented at trial overwhelming supported [Fitzpatrick's] conviction for first-degree murder." Commonwealth's Br. at 58. We agree. As a prior panel concluded, there was ample evidence of Fitzpatrick's guilt:

> Our review of the record reflects that each of the three elements of first-degree murder was proven beyond a reasonable doubt. . . Dr. Bollinger testified to the multiple injuries appearing on [v]ictim's body, which totaled at least twenty-five. . . In addition, Dr. Bollinger opined that, within a reasonable degree of medical certainty, the various bruises and injuries [v]ictim suffered could have resulted from [v]ictim being held under the water in a creek by another person and drowning. . . It is undisputed that [Fitzpatrick] and [v]ictim were alone on the property at the time that [v]ictim drowned in the creek. . . Thus, Fitzpatrick was the only person who could have held [v]ictim underwater in the creek, thereby making him responsible for the killing. . . Concerning the issue of specific intent possessed by [Fitzpatrick], the Commonwealth presented amply evidence of the couple's estranged relationship, including the fact that [Fitzpatrick] was in the midst of an extramarital relationship with another woman. . . The Commonwealth also presented stipulated evidence of the existence of a total of $1,714,000 in life insurance policies upon [v]ictim, with [Fitzpatrick] being the designated beneficiary of those policies. In addition, it was stipulated that on the morning of June 1, 2012, [Fitzpatrick] conducted a Google

- 10 -

search on his work computer using the words "life insurance review during contestability period."

***Fitzpatrick***, 159 A.3d at 568-570 (citations to notes of testimony omitted). This Court also noted the additional inference of Fitzpatrick's guilt because he changed his statement regarding what happened at the lake. ***Id.*** at 570 n.6. Our review of the record also brings us to the conclusion that the above evidence amply established Fitzpatrick's guilt, and the prejudicial effect of admitting the email was so insignificant in comparison and therefore it could not have contributed to the verdict.

Due to our disposition of the hearsay issue for the note and email, we do not address Fitzpatrick's last issue regarding the coordinate jurisdiction rule. Therefore, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/19/2019