J-S32036-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TYRONE JEFFCOAT-PARKER | : | |
| | : | |
| Appellant | : | No. 615 EDA 2018 |

Appeal from the Judgment of Sentence January 2, 2018
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0000058-2017

BEFORE: SHOGAN, J., NICHOLS, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.: **FILED JULY 17, 2019**

Tyrone Jeffcoat-Parker (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of two counts of robbery, two counts of conspiracy to commit robbery, one count of terroristic threats, one count of theft by unlawful taking, and one count of receiving stolen property.[1] Upon review, we affirm.

The trial court summarized the facts and procedural history of this case as follows:

> Connor Pinnell [(Pinnell)] testified that on the night of October 5, 2016, he and his friends were hanging out in the walkout basement of his parents' home, in West Pottsgrove, Montgomery County. Between 9 and 9:30 p.m., one of his friends, Jesse Goodfellow [(Goodfellow)], arrived at the home. Goodfellow knocked on the sliding glass door, Pinnell unlocked the door and [Appellant] pushed Goodfellow into the room with a gun to his

---

[1] 18 Pa.C.S.A. §§ 3701(a)(1)(ii), (iv), 903(a)(1)/3701(a)(1)(ii), (iv), 2706(a)(1), 3921(a), 3925(a).

back. [Appellant] was accompanied by Carlton Gillis. [Appellant] demanded that Pinnell and his friends give them their wallets and other property. [Appellant] took Pinnell's bag that contained cash, marijuana off of the table, and related drug paraphernalia. Approximately $1500 cash, wrapped in a blue rubber band, was taken[.]

Officer Robert Stoudt responded to a report of an armed robbery. Pinnell ultimately followed the officer to the police station, where he was able to identify [Appellant], with whom he had attended high school, as the person who robbed him. Following Pinnell's identification, [Appellant] was placed under arrest. A search incident to that arrest revealed $1172 cash wrapped in a blue rubber band secreted in [Appellant]'s sock. . . . Officer Stoudt also interviewed [Appellant]'s girlfriend. During that interview[,] she gave police $310 – two one hundred dollar bills, one fifty and three twenties. The cash recovered totaled $1482.00.

\*       \*       \*

[At trial, Appellant] testified in his own defense and presented testimony purporting to establish that the instant case was not a robbery, but a drug deal gone bad. The specific testimony is not relevant to the instant appeal. . . .

Following a three day trial, a jury convicted [Appellant] of two counts of Robbery, two counts of Criminal Conspiracy-Engaging, Terroristic Threats, Theft by Unlawful Taking, and Receiving Stolen Property. On January 2, 2018, the [trial court] imposed a sentence of five (5) to ten (10) years for the first count of Robbery and a consecutive sentence of two (2) to four (4) years for the second count of Robbery, for an aggregate sentence of seven (7) to fourteen (14) years [of] incarceration in a State Correctional Facility. [On all other counts, the Court imposed no further penalty.] On January 10, 2018, [Appellant] filed a post sentence motion, which was denied by Order of February 6, 2018. This [timely] appeal followed.

Trial Court Opinion, 8/13/18, at 1-4 (footnotes and record citations omitted).

On appeal, Appellant presents the following issues for review:

1. Did the [t]rial [c]ourt err in finding that [A]ppellant's challenge to [the Commonwealth]'s use of peremptory challenges based upon impermissible considerations of race and gender in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986) was waived?

2. Did the [trial court] err in sustaining [the Commonwealth]'s objection to a question to Gloria Parker, to elicit evidence of a conversation to impeach a witness by relying upon the hearsay rules and not Pa.R.E. 607?

3. Did the [t]rial [c]ourt abuse its discretion in sentencing [A]ppellant of 7 to 14 years [of] state-incarceration by misapplying the Sentencing Guidelines, as such a sentence was in the aggravated range of the guidelines?

Appellant's Brief at 3.

In his first issue, Appellant argues that the trial court erred in finding that he waived his *Batson* claim. Additionally, Appellant maintains that the Commonwealth committed a *Batson* violation during the jury selection process because it used "peremptory strikes on the basis of race." *Id.* at 6.

In *Batson*, the United States Supreme Court held that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." *Batson v. Kentucky*, 476 U.S. 79, 89 (1986). The Supreme Court of Pennsylvania has explained the framework for analyzing a *Batson* claim:

First, the defendant must make a *prima facie* showing that the circumstances give rise to an inference that the prosecutor struck one or more prospective jurors on account of race; second, if the *prima facie* showing is made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the juror(s) at issue; and third, the trial court must then make the ultimate

- 3 -

determination of whether the defense has carried its burden of proving purposeful discrimination. ***Batson***, 476 U.S. at 97[.]

***Commonwealth v. Cook***, 952 A.2d 594, 602 (Pa. 2008) (quoting ***Commonwealth v. Harris***, 817 A.2d 1033, 1042 (Pa. 2002)).

With respect to the preservation of ***Batson*** claims, our Supreme Court has stated an appellant must raise a ***Batson*** objection **during** *voir dire* in order to "preserve a challenge to the Commonwealth's use of peremptory strikes." ***Commonwealth v. Smith***, 17 A.3d 873, 894 (Pa. 2011). Where "defense counsel did not raise or preserve any claim of racial discrimination in jury selection with a contemporaneous ***Batson*** objection at trial, we have repeatedly held that the ***Batson*** framework does not apply". ***Commonwealth v. Hutchinson***, 25 A.3d 277, 287 (Pa. 2011).

In this case, the record reveals that Appellant did not raise a ***Batson*** objection during the jury selection process. ***See*** N.T., 10/2/17, at 49-51. Instead, Appellant raised a ***Batson*** claim after the jury had been sworn. ***Id.*** at 59-73. Accordingly, Appellant has failed to preserve his ***Batson*** claim.

Further, even if Appellant had raised a timely ***Batson*** claim, we would conclude that Appellant waived this issue on appeal. Appellant's ***Batson*** argument consists of nothing more than a single bald assertion that the strike of juror 46 was "pretextual" because "she may have known [A]ppellant from church years prior." Appellant's Brief at 7. Appellant's argument is severely underdeveloped and includes no citation to any pertinent authority. Our Supreme Court has long held that it is not the courts' obligation to formulate

arguments on behalf of an appellant. ***Commonwealth v. Wright***, 961 A.2d 119, 135 (Pa. 2008). Therefore, even if Appellant had preserved his ***Batson*** claim with the trial court, we would conclude that he waived it on appeal. ***See Commonwealth v. Johnson***, 985 A.2d 915, 924 (Pa. 2009) (stating that "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived"); ***Commonwealth v. Clayton***, 816 A.2d 217, 221 (Pa. 2002) ("[I]t is a well settled principle of appellate jurisprudence that undeveloped claims are waived and unreviewable on appeal."); ***see also*** Pa.R.A.P. 2119(a) (requiring that each argument must be "followed by such discussion and citation of authorities as are deemed pertinent").

In his second issue, Appellant argues that the trial court abused its discretion in sustaining the Commonwealth's hearsay objection to the testimony of Gloria Jeffcoat-Parker, Appellant's mother. Appellant contends that he intended to use his mother's testimony to impeach the testimony of Thomas Pinnell, Pinnell's father.

Our standard of review is as follows:

> "An appellate court's standard of review of a trial court's evidentiary rulings, including rulings on the admission of hearsay … is abuse of discretion." ***Commonwealth v. Walter***, [] 93 A.3d 442, 449 ([Pa.] 2014). Thus, we will not disturb an evidentiary ruling unless "the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by evidence of record."

*Commonwealth v. Cooper*, [] 941 A.2d 655, 667 ([Pa.] 2007) (citation omitted).

*Commonwealth v. Fitzpatrick*, 204 A.3d 527, 531 (Pa. Super. 2019).

Hearsay is an out of court statement made by the declarant which a party seeks to offer into evidence to prove the truth of the matter asserted in the statement. Pa.R.E. 801(c). In general, hearsay is not admissible, except as provided by the Pennsylvania Rules of Evidence, by other rules prescribed by the Pennsylvania Supreme Court, or by statute. Pa.R.E. 802. "The rationale for the hearsay rule is that hearsay is too untrustworthy to be considered by the trier of fact." *Commonwealth v. Charlton*, 902 A.2d 554, 559 (Pa. Super. 2006) (quotations and citation omitted).

If a statement is not offered for its truth, then the hearsay exclusion does not preclude its admission. "[O]ut-of-court statements may be admissible because they are non-hearsay, in which case they are admissible for some relevant purpose other than to prove the truth of the matter asserted." *Commonwealth v. Mason*, 130 A.3d 601, 637 (Pa. 2015). "The credibility of a witness may be impeached by any evidence relevant to that issue, **except as otherwise provided by statute or these rules**." Pa.R.E. 607(b) (emphasis added).

At trial, Appellant testified that he did not rob anybody and that his confrontation with Pinnell was the result of a drug deal at Pinnell's house that turned into an altercation. N.T., 10/4/17, at 8-10. Appellant claimed that he attempted to purchase marijuana from Pinnell but that Pinnell gave him an

ounce less than the agreed amount. *Id.* at 9. Appellant stated that after a short shoving match with Pinnell, he grabbed his money back, ran out of the house, and drove away. *Id.* at 9-10. Appellant asserted that Pinnell and Pinnell's father chased him by vehicle, ran him off the road, and tried to shoot him. *Id.* at 11-12. When Pinnell's father testified at trial, he denied that the drug deal, chase, and shooting ever occurred. *Id.* at 50-51.

Appellant called his mother to testify that Pinnell's father had admitted to her that he and Pinnell had in fact chased Appellant and attempted to shoot Appellant. *See id.* at 58. The Commonwealth objected to this questioning and the trial court sustained the objection. *Id.* at 58, 68. The following discussion between the trial court and Appellant's counsel occurred following the Commonwealth's objection:

> THE COURT: Now you want to ask her what did he say, so it's still -- we agree that what she is about to testify to will be the out-of-court statement; correct?
>
> [Def. Counsel]: Yes.
>
> THE COURT: Of [Pinnell's Father].
>
> [Def. Counsel]: Yes.
>
> THE COURT: And you want to use it for the truth of the matter asserted?
>
> [Def. Counsel]: Not necessarily. Just that he said it.
>
> THE COURT: What else would you do it for then?
>
> [Def. Counsel]: To rebut the sworn testimony of [Pinnell's Father].

THE COURT:     Right.  So it was the truth.  If he said I didn't chase, you would be -- the truth is I did say it, I said I chased.  Obviously you're going to argue to the jury with that said that she said he did say it, therefore he chased them.  You'll argue it.  You have to.

[Def. Counsel]:   Yeah, I'm going to argue that, but --

THE COURT:  Your client testified to it.

[Def. Counsel]:  It's not for the truth of the matter that he really did chase him.  It's just to rebut his denial under oath.

*Id.* at 60-61.

As he did at trial, Appellant argues that the trial court improperly excluded the testimony of Appellant's mother on the basis that her testimony would be hearsay.  Appellant contends that the testimony was not hearsay because he did not seek to introduce the evidence to prove the truth of the matter asserted, *i.e.*, that Pinnell and Pinnell's father chased and shot at Appellant after a bad drug deal, but rather to impeach the testimony of Pinnell's father that the alleged incident never occurred.

While the testimony of Appellant's mother would have served to impeach Pinnell's father, it also would have served to bolster Appellant's own testimony.  Consequently, although Appellant would have used his mother's testimony for impeachment purposes, it was nonetheless inadmissible because it went to the truth of the matter asserted, *i.e.*, that Appellant did not rob Pinnell, but had an altercation with Pinnell and Pinnell's father because of a bad drug deal.  *See* Pa.R.E. 607(b) 801(c), 802.  Were we to determine the testimony of Appellant's mother was admissible for impeachment purposes,

we would be allowing Appellant to circumvent the hearsay rule to bolster his defense under the guise of impeachment testimony. Therefore, we conclude that the trial court did not abuse its discretion in sustaining the Commonwealth's objection to the hearsay testimony.

In his third issue, Appellant argues that the trial court erred in imposing his sentence. Appellant asserts that the court "misapplied the sentencing guidelines" and gave Appellant an aggravated-range sentence because it imposed two standard-range sentences consecutively. Appellant's Brief at 11-12. Appellant argues that this was improper because the trial court stated it was going to give him a standard-range sentence. This issue challenges the discretionary aspects of Appellant's sentence.

"The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal." *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1265 (Pa. Super. 2014). "An appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence." *Id.* We conduct this four-part test to determine whether:

> (1) the appellant preserved the issue either by raising it at the time of sentencing or in a post[-]sentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth a concise statement of reasons relied upon for the allowance of his appeal pursuant to Pa.R.A.P. 2119(f); and (4) the appellant raises a substantial question for our review.

*Commonwealth v. Baker*, 72 A.3d 652, 662 (Pa. Super. 2013) (citation omitted). "A defendant presents a substantial question when he sets forth a

- 9 -

plausible argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing process." **Commonwealth v. Dodge**, 77 A.3d 1263, 1268 (Pa. Super. 2013) (quotations and citations omitted).

Here, Appellant preserved his discretionary aspects of sentencing claim by raising it in a post-sentence motion. **See** Post-Sentence Motion, 1/10/18. Appellant also filed a timely notice of appeal and included in his appellate brief a concise statement of the reasons relied upon for the allowance of his appeal pursuant to Pennsylvania Rule of Appellate Procedure 2119(f). **See** Appellant's Brief at 11-12. Thus, we must determine whether Appellant's discretionary aspects of sentencing claim raises a substantial question for our review.

Although Appellant's argument is far from the model of clarity and largely undeveloped, from what we can discern, Appellant appears to argue that the trial court erred by sentencing Appellant to two consecutive standard-range sentences. A "bald excessiveness claim based on the imposition of consecutive sentences" does not raise a substantial question for review unless the case involves circumstances where the application of the guidelines would be clearly unreasonable. **Commonwealth v. Dodge**, 77 A.3d at 1270. "The imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes

and the length of imprisonment." ***Commonwealth v. Moury***, 992 A.2d 162, 171-72 (Pa. Super. 2010).

Where the individual sentences are within the applicable guideline ranges (as Appellant concedes in this case), the sentencing court's decision to impose consecutive sentences does not raise a substantial question for review. We have explained:

> To make it clear, a defendant **may** raise a substantial question where he receives consecutive sentences within the guideline ranges if the case involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive sentence; however, a bald claim of excessiveness due to the consecutive nature of a sentence will not raise a substantial question.

***Dodge***, 77 A.3d at 1270 (emphasis in original).

In this case, the consecutive imposition of Appellant's standard-range sentences for two counts of armed robbery did not result in a clearly unreasonable or excessive aggregate sentence (7 to 14 years of incarceration). Thus, Appellant's bald claim of excessiveness because of the consecutive nature of his sentences does not raise a substantial question for our review. ***See id.*** Accordingly, Appellant's sentencing issue lacks merit.

Judgment of sentence affirmed.

Judge Shogan joins the memorandum.

Judge Nichols concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/17/19