J-S52008-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                                :                PENNSYLVANIA
                                                :

              v.                                   :

HUSSAIN KIADEE                       :

              Appellant           :      No. 973 EDA 2020

Appeal from the Judgment of Sentence Entered September 28, 2018
In the Court of Common Pleas of Delaware County
Criminal Division at No(s):  CP-23-CR-0007557-2016

BEFORE:   PANELLA, P.J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.:           **FILED:  MARCH 4, 2021**

On October 21, 2016, Darby Borough Police discovered the body of Fabine Siryone dead on her kitchen floor. Siryone had been stabbed thirty-three times. Police quickly settled on Appellant, Hussain Kiadee, as the primary suspect in Siryone's murder. Kiadee ultimately confessed to the murder while being interrogated by police. Kiadee now appeals from his conviction for first-degree murder and associated crimes, challenging the legality of his arrest, the voluntariness of his confession, and the admissibility of statements in a police report filed by Siryone five months before her death. After careful review, we affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

In his first two issues, Kiadee argues the suppression court erred in denying his suppression motion. In his suppression motion, Kiadee sought suppression of his confession.

Our review of a challenge to the denial of a suppression motion is "limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." **Commonwealth v. Jones**, 988 A.2d 649, 654 (Pa. 2010). Because the Commonwealth prevailed at the suppression hearing, "we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." **Id**. Where the suppression court's factual findings are supported by the record, we are bound by those facts and may reverse only if the court's legal conclusions are erroneous. **See Commonwealth v. Bryant**, 67 A.3d 716, 724 (Pa. 2013).

Kiadee first argues that his confession should have been suppressed because police lacked probable cause to arrest him. Specifically, Kiadee contends that the facts possessed by police were insufficient to support a finding of probable cause.

To be lawful, an arrest must be supported by probable cause. **See Commonwealth v. Wells**, 916 A.2d 1192, 1195 (Pa. Super. 2007). "Probable cause exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed." **Commonwealth v. Gibson**, 638

A.2d 203, 206 (Pa. 1994). In determining whether probable cause exists, we must examine the totality of the circumstances. *See Commonwealth v. Martin*, 101 A.3d 706, 721 (Pa. 2014); *see also Illinois v. Gates*, 462 U.S. 213, 233 (1983).

Here, we conclude the suppression court properly determined that police had probable cause to arrest Kiadee for Siryone's murder. We note that the suppression court found "the testimony provided by Detective Pitts to be wholly credible and the testimony from [Kiadee] to be incredible." Suppression Court Order, 08/29/2017, at 6.

According to Detective Pitts's testimony, Kiadee had a long history of stalking and harassing Siryone. *See* N.T., Suppression Hearing, 08/15/2017, at 11-16. Siryone often complained to friends and family that she received unwanted phone calls and visits from Kiadee after she ended her relationship with him. *See id*., at 19-25. There were even instances in which Kiadee threatened to kill Siryone if he could not be with her. *See id*., at 16, 25. In the end, the harassment and threats escalated to a point where Siryone needed to file a police report. *See id*., at 11.

In addition, Detective Pitts testified about the video evidence linking Kiadee to the murder scene. He specifically pointed to a surveillance video in which a male, resembling Kiadee, entered Siryone's apartment and left shortly thereafter. *See id*., at 26-29. The video also showed Kiadee's white Nissan Maxima, with a black hood and black bumpers, driving away from Siryone's apartment moments later. *See id*., at 30.

In sum, we cannot conclude the court erred in finding, under the totality of the circumstances, that police had probable cause to arrest Kiadee for Siryone's murder. Detective Pitts's testimony was sufficient to establish that police had a reasonable basis for suspecting Kiadee had murdered Siryone. Therefore, we find no basis to disturb the suppression court's finding of probable cause.

Kiadee next argues that his confession was involuntary and should have been suppressed based on the totality of the circumstances. He also alleges that he should have been re-warned of his constitutional rights before making inculpatory statements.

When a defendant, like Kiadee, alleges his confession was involuntary, we must examine the totality of the circumstances surrounding the confession. *See Commonwealth v. Yandamuri*, 159 A.3d 503, 525 (Pa. 2017). The question of voluntariness is not whether the defendant would have confessed without interrogation, but whether the interrogation was so manipulative or coercive that it deprived the defendant of his ability to make a free and unconstrained decision to confess. *See Commonwealth v. Fitzpatrick*, 181 A.3d 368, 373 (Pa. Super. 2018). In doing so, a court should consider: "the duration and means of the interrogation; the defendant's physical and psychological state; the conditions attendant to the detention; the attitude exhibited by the police during the interrogation; and all other factors that could drain a person's ability to resist suggestion and coercion." *Yandamuri*, 159 A.3d 525.

- 4 -

After reviewing the record, we discern no error in the suppression court's conclusion that Kiadee's confession was voluntary. Once again, we note the court fully credited Detective Pitts's testimony regarding the voluntariness of Kiadee's confession. **See** Suppression Court Order, 08/29/2017, at 6.

Detective Pitts testified that Kiadee was given **Miranda** warnings when he entered the police station. **See** N.T., Suppression Hearing, 08/15/2017, at 33-34. Detective Pitts informed Kiadee of his right to remain silent and his right to counsel. **See id.**, at 35. He also told Kiadee that he could stop answering questions at any time. **See id.**, at 36. Kiadee voluntarily waived his right to counsel and right to remain silent, as evidenced by his signature on a **Miranda** waiver form. **See** Suppression Hearing Exhibit 5.

In addition, the suppression hearing transcript reveals that Kiadee answered questions free of physical and mental restraint. Kiadee was not handcuffed or physically threatened during the interrogation. **See id.**, at 38. There was also no evidence that Kiadee, a native of Liberia, had difficulty understanding Detective Pitts during the interview. **See id.**, at 108, 126-127.

Furthermore, the interrogation was not prolonged and exhaustive as Kiadee suggests in his brief. Kiadee was initially questioned for approximately one hour. **See id.**, at 41. Detectives concluded the interrogation after Kiadee had denied any involvement in murdering Siryone. **See id.**, at 48. However, the detectives had conclude that despite Kiadee's denial, they had enough circumstantial evidence to charge Kiadee with murder. They therefore started to "process" him, which involved taking photographs and fingerprinting him.

*See id.* There is no indication that he was being interrogated during this process.

While being processed, Kiadee began making inculpatory statements. *See id*., at 49. In fact, Kiadee requested the opportunity to speak with the detectives again. *See id*. When detectives were informed, they brought Kiadee back into the interrogation room, approximately seven and one-half hours after his first interrogation. *See id.* They did not re-*Mirandize* him. Kiadee immediately admitted to the murder, but argued that he did not intend to kill Siryone. *See id*., at 49-50. He refused to have his confession recorded, but did not ask for an attorney. *See id*., at 51-52.

As such, there was no basis to conclude Kiadee's confession was involuntary based on the totality of the circumstances.

As for Kiadee's assertion that he should have been re-*Mirandized* before the second interrogation, we note that Kiadee failed to fully develop this argument with discussion and citation to relevant, legal authority. The Rules of Appellate Procedure state unequivocally that each issue an appellant raises must be supported by discussion and analysis of pertinent legal authority. *See* Pa.R.A.P. 2119 (a). "[M]ere issue spotting without analysis or legal citation to support an assertion precludes our appellate review of [a] matter." *Commonwealth v. Martz*, 232 A.3d 801, 811 (Pa. Super. 2020). Therefore, we find this argument waived.

However, even if Kiadee had developed this argument, it fails nonetheless. Our Supreme Court has held that not every renewal of an interrogation requires a repetition of *Miranda* warnings. *See Commonwealth v. Koehler*, 737 A.2d 225, 353 (Pa. 1999). A court must look at the circumstances of each case and determine whether previously provided *Miranda* warnings have become stale. *See id*. The factors relevant to such an inquiry are: (1) the length of time between the warnings and the challenged interrogation; (2) whether the interrogation was conducted at the same place where the warnings were given; (3) whether the officer who gave the warnings also conducted the questioning; and (4) whether statements are materially different from those made at the time of the warnings. *See Commonwealth v. Bennett*, 282 A.2d 276, 280 (Pa. 1971).

Here, Kiadee received *Miranda* warnings roughly seven and one-half hours prior to his challenged statement. *See* N.T., Suppression Hearing, 08/15/2017, at 47-49. His second interrogation occurred in the same room where his first interrogation took place, and was conducted by Detective Pitts who had given the initial warnings. *See id*., at 48. Furthermore, Kiadee's second statement was inculpatory. *See id*., at 50-51.

We recognize the time between the warning and the inculpatory statements in this case was longer than other cases where our Supreme Court held that repeated warnings were unnecessary. *See Commonwealth v. Gray*, 374 A.2d 1285, 1289 (Pa. 1977) (holding warnings were not stale when given over two hours before the inculpatory statement); *see also*

*Commonwealth v. Jones*, 386 A.2d 495, 498 (Pa. 1978) (finding warnings were not stale when an inculpatory statement was given three hours after the warnings); compare *Commonwealth v. Wideman*, 334 A.2d 594, 599 (Pa. 1975) (finding warnings stale when materially different statement was given twelve hours after warnings issued by different officers in a different room of building). We also note that Kiadee offered a materially different statement during the second interrogation.

However, there are other circumstances in this case that convince us Kiadee did not need to be re-*Mirandized*. Detectives ended the first interrogation after only an hour, accepting (but not believing) Kiadee's denial of involvement. Kiadee was then taken to be fingerprinted and photographed. During this process, there is no indication that he was questioned or otherwise encouraged to make inculpatory statements. Yet Kiadee allegedly made several inculpatory statements, and explicitly requested to speak with detectives again. He was returned to the same room where he received the *Miranda* warnings, and spoke to the same detective. He demonstrated an awareness of his rights by refusing to have his confession recorded, but nonetheless provided a verbal confession.

Under these circumstances, we conclude the initial *Miranda* warnings were not stale. While the time between the warnings and Kiadee's inculpatory statements is concerning, the unique circumstances presented here are sufficient to affirm the trial court's conclusion that Kiadee's confession was voluntary under all the circumstances.

Therefore, after reviewing Kiadee's first two issues, we find the court did not err in refusing to suppress Kiadee's confession.

Kiadee's remaining claim asserts that the trial court abused its discretion in admitting the victim's statement to police accusing Kiadee of harassment and terroristic threats. He argues that the victim's statement was inadmissible hearsay, because the statement did not qualify under the excited utterance exception to the rule against hearsay. As such, Kiadee contends he was prejudiced by the admission of this evidence at trial.

Before reaching the merits of Kiadee's hearsay issue, we must first determine whether he properly preserved it for our review. The Commonwealth argues that Kiadee failed to do so because he did not object to the victim's statement at trial. While Kiadee concedes this fact, he contends he preserved the issue by filing a pre-trial motion in limine, asking the trial court to preclude the victim's hearsay statement. In response, the Commonwealth contends the trial court did not clearly and definitively rule on Kiadee's motion in limine, and therefore Kiadee was obliged to object to the testimony during the trial.

"[A] motion in limine may preserve an objection for appeal without any need to renew the objection at trial, but only if the trial court clearly and definitively rules on the motion." ***Commonwealth v. McGriff***, 160 A.3d 863, 866 (Pa. Super. 2017). Therefore, "if the trial court defers ruling on a motion in limine until trial, the party that brought the motion must renew the objection at trial or the issue will be deemed waived on appeal." ***Blumer v.***

***Ford Motor Company***, 20 A.3d 1222, 1232 (Pa. Super. 2011) (citations omitted).

The record reveals the trial court did not definitively rule, on the record, on Kiadee's motion in limine to exclude the victim's statement under the hearsay rule. ***See*** N.T., Pre-trial Hearing, 02/16/2018, at 4-5; ***see also*** Trial Court Order, 02/20/2018, at 1. Instead, the court's order merely limited the Commonwealth's proffer of prior bad acts evidence to those witnesses who had first-hand knowledge of such acts. Furthermore, a review of the trial transcript reveals that Kiadee failed to renew his objection at trial. ***See*** N.T., Trial, 08/14/2018, at 203-209. As such, there appears to be some merit to the Commonwealth's position.

However, as Kiadee points out in his Reply Brief, the specific issue of preservation of his hearsay claim was discussed during the hearing on Kiadee's post-sentence motion. There, defense counsel discussed the procedural history of the issue, noting that the record was not entirely clear regarding the court's disposition of Kiadee's motion in limine. ***See*** N.T., Post-Sentence Motion Hearing, 1/30/2020, at 4-6. Counsel noted that the pre-trial transcripts did not include an explicit ruling on the motion in limine, but suggested that "off-the-record discussions … led the parties to particular conclusions." ***Id***., at 8-9.

Counsel subsequently stated, "[w]e came away from that proceeding with the understanding the Court was going to allow" testimony based upon the police report Siryone made five months prior to her death. ***Id***., at 10. The

- 10 -

trial court indicated that this was an accurate description of its ruling on Kiadee's motion in limine. *See id*., at 10-11. Under these circumstances, we cannot conclude that Kiadee waived the issue. The trial court confirmed that through off-the-record discussions, the parties were aware of the intent of its order. Further, the record confirms that the parties operated under these impressions at trial. Not only did the Commonwealth present testimony of the detective who wrote the police report, but Kiadee did not object to it as violating the order of February 2nd.

Addressing Kiadee's third issue on the merits, we must now determine whether the victim's statement to police qualifies under the excited utterance exception. Pennsylvania Rule of Evidence 803(2) governs the excited utterance hearsay exception, defining an excited utterance as "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Although the report states that the victim was scared after the alleged harassment, it also reflects on events that took place prior to the harassing incident, which would take the victim's reporting statements outside of the excited utterance exception.

In response, the Commonwealth contests that even if the victim's written statement does not qualify under the excited utterance exception, it satisfies the business records exception because neither the victim nor the officer created the record in anticipation of litigation and the statement was introduced through the record's author. Appellee's Brief at 22. Pennsylvania

Rule of Evidence 803(6) governs the business records hearsay exception, which requires that a record custodian or "other qualified witness testify that the record was made 'at or near the time' of the event recorded and that the record was kept in the regular course of business." There is a presumption that police reports normally do not satisfy the business records exception because they are generally created in anticipation of litigation. **See Commonwealth v. May**, 195, 898 A.2d 559, 565 n.12 (Pa. 2006).

Although the victim did not want to press charges when she made the report, there is no indication that she wanted to make the report for any other reason than for possible use in a future investigation or litigation. Consequently, the police report does not qualify under the business record exception.

However, even if we agree with Kiadee that the police report does not fall under the excited utterance or business record exception and the trial court admitted the report in error, the error was harmless because the overwhelming physical evidence of Kiadee's guilt presented at trial. The Commonwealth bears the burden of establishing harmless error on appeal. **See Commonwealth v. Fitzpatrick**, 204 A.3d 527, 533 (Pa. Super. 2019). One way the Commonwealth can establish harmless error is by showing that the prejudice caused by improper admission of hearsay evidence was so minimal in comparison to the properly admitted and uncontradicted inculpatory evidence that the hearsay evidence could not have contributed to the verdict. **See id**.

Here, Detective Brian Pitts testified that Kiadee confessed to the murder. *See* N.T., Trial, 8/15/18, at 253. Law enforcement found his DNA on the victim's clothing at the crime scene. *See id*., at 268-269. His vehicle is on the video surveillance at the location and time of the murder. *See id*., at 215-219. The testimony from family and friends painted the picture of Appellant's jealousy and possessiveness of the victim after they ended their relationship. *See* N.T., Trial, 8/14/18, at 29-30; 73-80; 89-92; 120-121; 141-152. Measured against this overwhelming evidence, the prejudice caused by the admission of the hearsay statements in the police report is truly minimal. If the jury was inclined to find all of the inculpatory evidence incredible, we cannot see how the admission of the police report would be the evidence that caused them to change their minds. Even if the trial court abused its discretion in admitting the victim's report, it was harmless error. Kiadee's third issue on appeal offers no merit for relief.

Accordingly, for the reasons stated above, we affirm the decision of the trial court.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/4/21