J-A01045-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WILLIAM R. KRIMMEL | : | |
| | : | |
| Appellant | : | No. 937 EDA 2018 |

Appeal from the Judgment of Sentence February 20, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001140-2017

BEFORE: NICHOLS, J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.: **FILED MARCH 03, 2020**

William R. Krimmel (Appellant) appeals from the judgment of sentence

to an aggregate term of eight to sixteen years' incarceration in a state

correctional institution,[1] imposed after a jury found him guilty of discharge of

a firearm into an occupied structure, possessing instruments of crime, and

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The trial court sentenced Appellant to the statutory maximum sentence allowed, beyond the aggravated range of the sentencing guidelines. Specifically, Appellant was sentenced to (1) a term of three and one-half to seven years' incarceration on the discharge of a firearm into an occupied structure conviction; (2) a consecutive term of two and one-half to five years' incarceration on the possession of an instrument of crime conviction; (3) a consecutive term of one to two years' incarceration on the first reckless endangerment conviction; and (4) a consecutive term of one to two years' incarceration on the second reckless endangerment conviction.

two counts of recklessly endangering another person.[2]   Appellant's 6-day jury trial was held before the Honorable Anne Marie B. Coyle.  Appellant filed post-sentence motions, which were denied by order entered March 6, 2018.  Appellant timely appealed to this Court.[3]  We Affirm.

The trial court summarized the factual history of this case as follows:

> This case initiated following investigation of reports that Appellant had indiscriminately fired deadly weapons from inside and outside his residence located at 8206 Halstead Street in the northeast section of Philadelphia, including a high velocity assault rifle, toward and into neighboring homes during the early morning hours of December 24, 2016, which had recklessly endangered the lives of multiple occupants of the nearby residents and caused property damage.
>
> On December 24, 2016, beginning at approximately 2:00 a.m., Appellant's nearby neighbors, [the Ostrowskis] reported hearing three booming sounds like fireworks in sequence. [Mr. Ostrowski] recalled quiet pauses were followed by additional two booms and then a single louder noise.  He said a quiet pause again ensued until about 2:10 a.m. when two more booms rang that also sounded like louder fireworks emanating from outside the rear of their twin home.
>
> [Mr. Ostrowski] testified at trial that as the third loudest round was fired from the back of their property, he and his wife ran and remained cowered in their front hallway to avoid the danger.  Upon later inspection once the firing ceased, Mr. Ostrowski observed resulting damage from multiple penetrating bullet holes inside and outside their home on the back building side that had been facing Appellant's

---

[2] 18 Pa.C.S. §§ 907, 6108, 907, and 2705, respectively.  An additional charge of carrying firearms in public was subsequently *nolle prossed*.

[3] The trial court directed Appellant to file a Pa.R.A.P.  1925(b) statement of errors complained of on appeal on March 23, 2018; Appellant timely filed his statement on April 13, 2018.  The trial court filed its opinion on April 1, 2019.

property…[h]e recalled only knowing that Appellant was an adjacent nearby neighbor but reported no individual disputes with him.

Other neighbors in close proximity to Appellant's residence reported hearing the spurts of differing sounding shots and running for cover within their homes. [Another neighbor] testified at trial that she was an adjoining neighbor to the Ostrowski's twin home located adjacent to the back of Appellant's residential twin building. She remember being at home with her husband and children when she similarly heard loud popping noises that sounded like gunshots about 2:00 a.m. coming from the direction of Appellant's property that adjacently faced the back of her home. She recalled frantically telling her thirteen year old son who slept in the back bedroom that had faced Appellant's property to run to her bedroom located in the front of the house.

[The neighbor] testified remembering brief intervals of quiet between multiple rounds of fired shots. During a silenced period, [she] ran downstairs and peered out of her kitchen window. She recalled seeing lights emanating only from Appellant's home and his open door. She and her husband called 911 for help. She testified that she then heard more gunshots and ran again to her kitchen window and ducked. Most importantly she testified that she had unequivocally remembered peering through her back kitchen window and observing Appellant in a crouched position outside of his home holding what looked like a large gun in his hands and then running back into his first floor apartment.

Lieutenant David Marnien testified that he had been on routine patrol duty as a uniformed Philadelphia police officer when he received multiple radio calls reporting person with gun at 8206 Halstead Street. As Lieutenant Marnien pulled up in his marked police vehicle to this twin home residence he noticed that the first-floor window facing the street appeared to be "all shot out." Lieutenant Marnien along with other responding officers including Officer Fred Antkowiak cautiously knocked on the door of this residence and were permitted entry by Appellant who reported owing this duplex. The officers, prior to entry into the first floor apartment, had assumed they were responding to a shooting coming from outside the property. Upon entering however, the officers

noticed that there was "an odor of burnt gun powder" and observed "multiple cartridge casings that were fired bullets."

When the officers inquired of Appellant what happened and why, Appellant claimed he had fired his weapon because "there was somebody outside a house with a gun that was on the north side." Appellant stated to Lieutenant Marnien that there was somebody outside his house.[] Appellant appeared to be alone in this apartment and there was no visible evidence of any intruder contrary to Appellant's incredible claim testified to during the trial. Lieutenant Marnien further stated, "[t]he location of the bullet holes were all going out of the apartment and that he had observed "a weapon and an AKS assault weapon with magazine that were taped together on the table."[4] He instructed one of his officers "to take that and make the weapon safe, take the magazine out and eject a round." When the officers investigated the outside of the property in the "north" area that Appellant had claimed that he saw the unknown intruder approach, they found zero evidence of anyone having been present, no fired cartridge casings, and no bullet holes or strike marks emanating from outside the residence.

Trial Court 1925(a) Opinion at 2-4 (citations omitted).

Appellant raises the following issues on appeal:

A. Whether the trial court abused its discretion and/or erred as a matter of law, and violated the defendant's due process rights, by denying the defendant's request for a mistrial after the trial court reprimanded a Commonwealth witness in front

---

[4] Testimony at trial established that Appellant fired fourteen rounds, with fourteen fired cartridge casings recovered from his home, all corresponding with the AKS-762 weapon found there; the AKS-762 is a newer version of the AK-47. Bullets from this rifle can travel up to two miles, through a brick wall or a bullet-proof vest. In addition, the police recovered a hunting rifle and another handgun, plus numerous hundreds of live rounds corresponding not only to those weapons, but also to two other weapons that were not recovered. Also found were (i) magazine cartridges and the magazines that Appellant had adapted by connecting them with duct tape to create and turn a thirty-round magazine into a sixty-round magazine, and (ii) a drum that was capable of shooting ninety live rounds. 12/14/17 N.T. at 72-99.

of the jury when the witness testified regarding his reluctance to testify against the defendant?

B. Whether the trial court – after directing the defendant not to wear his United States Postal Service uniform during trial since it would be prejudicial if the jury, in a shooting case, knew the defendant was a postal employee – abused its discretion and/or erred as a matter of law, and violated the defendants due process rights, by *sua sponte* informing the Commonwealth after the defendant testified, that the Commonwealth would be permitted to elicit testimony that the defendant was a postal employee, and thereafter allowing the Commonwealth to do so where the Commonwealth itself did not seek to elicit such testimony prior to the trial court's prompting?

C. Whether the trial court abused its discretion and/or erred as a matter of law, and violated the defendant's due process rights, Fifth Amendment privilege and rights under Article I, Section 9 of the Pennsylvania Constitution, by allowing the Commonwealth, over the [d]efendant's objection, to elicit testimony from a Commonwealth law enforcement witness regarding [d]efendant's post-*Miranda* silence?

D. Whether the trial court abused its discretion and/or erred as a matter of law, and violated the defendant's due process rights, by denying the defendant's various requests for continuances, despite the fact that the defendant suffered from severe mental health illness, thereby resulting in the defendant being unable to aid his counsel?

E. Whether the trial court abused its discretion and/or erred as a matter of law when it sentenced the defendant to the statutory maximum sentence allowed, well above and beyond the aggravated range of the sentencing guidelines?

Appellant's Brief at 7-8.

Appellant argues, first, that the trial court erred when, in the presence of the jury, it reprimanded a subpoenaed witness - the next-door neighbor and long-time friend of Appellant - for his reluctance to testify, and thereby

communicated its predisposition against Appellant to the jury. We find this argument to be without merit. In its well-reasoned 1925(a) opinion, the trial court explained:

> A contextual review of the transcribed record demonstrated that no undue prejudice however resulted from the line of questioning of the Court. It was simply a natural explanation of motivations that were clearly unstated. This Court had exhibited zero negative bias, ill will or interpretation of facts presented toward Appellant by the inquiry.
>
> - --
>
> The contextual natur[e] of the disputed question began when on December 14, 2017, Appellant's neighbor and friend of eleven (11) years, Gerard King, was called by the Commonwealth as a reluctant witness. Mr. King testified that he lived in the adjoining building to Appellant. He recalled hearing similarly sounding shots fired from Appellant's apartment approximately one week prior to the final shooting event. For some unknown reason he did not report or even naturally react to shots being fired behind his walls even though this had occurred in the middle of the night and when he and his minor daughter was sleeping in bedrooms on the other side of potentially impacted walls. He further reported no natural reaction or even concern with Appellant after observing resulting damage to Appellant's front windows that prior week after first rounds of shots were heard.
>
> After the Commonwealth finished direct examination, frankly Mr. King's mystifying motivations did not appear to be fully explored. This Court clarified this further for the jury by simply asking the witness why he didn't want to come to court, to which he replied, "I'm friends with the Defendant for a long time. I care about him." This Court then asked What about your other neighbors, do you care about them?" Mr. King replied that he did. This Court promptly withdrew its inquiry and told the jury to disregard even that natural exchange of information.
>
> The defense then motioned and argued for a mistrial because of this inquiry out of the presence of the jury. The motion was properly denied. However even though this Court did

have the right to explore this area of inquiry, this Court again instructed the jury that they were not to discern any point of view from the Court's question and to disregard the witness' response in an overabundance of caution. Thus even if the limited inquiry had been made in error this Court corrected the error with repeated cautionary instructions.

Furthermore, even if the inquiry had been made erroneously it was harmless. The standard for determining harmless error was firmly established in **Commonwealth v. Story**, [], 383 A.2d 155 (Pa. 1978) and its progeny. An error will be deemed harmless where the appellate court concludes beyond a reasonable doubt that the error could not have contributed to the verdict. If there is a reasonable possibility that the error may have contributed to the verdict, it is not harmless. **Commonwealth v. Mitchell**, [], 839 A.2d 202, 214 (Pa. 2003). In this case, this Court's limited and withdrawn and directed to disregard inquiry as to whether the witness cared for his neighbors could not have remotely contributed to the guilty verdicts. Thus, this claim and requested remedy lacked any factual and legal merit.

Trial Court 1925(a) Opinion at 22-23 (citations to N.T. omitted). We discern no abuse of discretion here. The trial court withdrew its question regarding the witness' neighbors, and immediately instructed the jury to disregard the question. 12/14/17 N.T. at 20. Appellant's counsel briefly cross-examined the witness, and another neighbor of Appellant then took the stand, and was examined. *Id*. at 23-38. After the jury exited the courtroom for lunch, Appellant's counsel moved for a mistrial, arguing that the trial court, by its question to the neighbor/friend of Appellant, was sending a message to the jury that it should be more concerned with the neighbors than with Appellant. *Id*. at 39-40. The trial court denied the motion for mistrial, but in an abundance of caution, offered to again advise the jury that they may not

"import anything from the Court's question that was sustained and disregard the response," and remind them that the "Court is not the finder of fact," and they should discern nothing from the Court's question. *Id*. at 41. Upon resumption of the trial, the trial court so advised the jury, and further emphasized that they should not think that the trial court intended to reflect any opinion whatsoever about the facts of the case "on either side of the fence." *Id*. at 42. A jury is presumed to follow the court's instructions. *Commonwealth v. Aikens*, 168 A.3d 137, 143 (Pa. 2017). Here, the trial court's explicit, repeated curative instructions were more than adequate to overcome any potential prejudice. *Commonwealth v. Leap*, 2019 PA Super 323, *5 (Pa. Super. filed October 25, 2019).

Appellant next argues that the trial court abused its discretion and violated Appellant's due process rights when, after directing Appellant not to wear his United States Postal Service (USPS) uniform during trial, it then prompted the Commonwealth to elicit testimony that Appellant was a USPS employee. Appellant's Brief at 28. Appellant alleges that after his counsel elicited testimony from him that he "worked for a federal agency," without objection from the Commonwealth, the trial court, *sua sponte,* declared that the Commonwealth would now be permitted to elicit testimony from Appellant that he worked for USPS, and the Commonwealth did so, thereby severely and unfairly prejudicing him. *Id*. at 29, 31. The trial court opined that "this claim however demonstrated a complete disregard of the transcribed record." Trial Court 1925(a) Opinion at 20. The trial court explained that Appellant

- 8 -

had worn his uniform at a pre-trial proceeding, and had been informed at that time by the assistant district attorney that per federal codes of conduct, doing so constituted a violation of USPS human resources policies. The trial court then advised Appellant that while he was permitted to wear his uniform, doing so "does not reflect well upon [him] to potential jurors." 12/12/17 N.T. at 11. The trial court noted that Appellant then acknowledged the wisdom of this view and voluntarily agreed to wear alternate clothing during trial, but that the trial court never prohibited him from wearing his uniform. Trial Court 1925(a) Opinion at 20. Citing Pa.R.E. 611, the trial court stated:

> Subsequently during the jury trial Appellant volunteered during his testimony that he had worked for an unnamed federal agency…Once Appellant identified the fact that he worked for a federal agency, it naturally opened the door for the Commonwealth to inquire which agency employed him on cross-examination, which was precisely what had occurred. Again, this argument failed to recite a remedial claim because no erroneous or unduly prejudicial evidentiary ruling had been entered.

*Id*. at 21. A review of the notes of testimony reveals that, contrary to Appellant's assertion, the Commonwealth did in fact object to counsel's inquiry on direct examination as to his employment, on grounds of relevance. 12/18/17 N.T. at 16. The trial court did not rule on this objection, and Appellant's counsel proceeded to ask Appellant how long he had worked at his job, to which Appellant replied, "twenty-five years". *Id*. During a recess, and prior to cross-examination by the Commonwealth, the trial court advised the Commonwealth that by testifying that he worked for a federal agency,

Appellant had opened the door to that line of inquiry, and the Commonwealth would be permitted to inquire as to which federal agency employed him; near the end of cross-examination, the Commonwealth so inquired, and Appellant responded that he was a tractor-trailer operator for USPS, and that he was "very proud of it". *Id*. at 29, 52. We review a trial court's evidentiary rulings on an abuse of discretion standard. ***Commonwealth v. Fitzpatrick***, 204 A.3d 527, 531 (Pa Super. 2019). An abuse of discretion will be found where "the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence of record." ***Id***. (citation omitted). We find no evidence here of manifest unreasonableness or undue prejudice by the trial court in ruling that the topic of Appellant's employment, once initiated by Appellant's counsel on direct examination, could be further explored by the Commonwealth on cross-examination.

Appellant next challenges the trial court's allowance of testimony from a Commonwealth law enforcement witness, Detective Matthew Burkhimer, regarding Appellant's post-*Miranda* silence. We discern no error of law or violation of Appellant's rights. Lieutenant David Marnien testified that upon arrival at Appellant's home following the report of gunshots from a neighbor, Appellant reported to him that he had been shooting a weapon because there was someone outside his house with a gun. 12/13/17 N.T. at 51. Appellant testified, however, that when he opened his door to Lt. Marnien, he tried to tell Lt. Marnien what had happened, but that "[h]e wasn't hearing what

- 10 -

[Appellant] had to say," and he told Appellant to "sit down and shut up." 12/18/17 N.T. at 49. Appellant was asked whether Detective Matthew Burkhimer, a detective who arrived on the scene after Lt. Marnien, had asked him what had happened, and he responded "[n]obody was talking to me at all." *Id*. at 52. After the defense rested, the Commonwealth requested permission to call Detective Burkhimer to rebut Appellant's testimony that no one gave him the opportunity to speak; the Commonwealth noted that Appellant was read *Miranda* warnings by the detectives and when "pressed for further details," invoked his right to remain silent. *Id*. at 69. Appellant's counsel initially objected to any rebuttal testimony of the detective, voicing his concerns that such testimony would bring up the fact that Appellant invoked his *Miranda* right to remain silent, but subsequently assented, so long as Appellant could be given the opportunity to explain why he elected not to answer questions from the detective and the trial court would caution the jury that no negative inference should be made. *Id*. at 73-74. The Commonwealth then called Detective Burkhimer, who testified that when he and his colleague entered Appellant's home, Appellant was in the living room with Lt. Marnien and some other officers, and after they introduced themselves, Appellant "said something about there was a man with a gun, then [another detective] read [Appellant] his *Miranda* warnings. And after that, [Appellant] did not want to speak to us." *Id*. at 77. The Commonwealth then asked Detective Burkhimer to explain *Miranda* warnings, and he did so. *Id*. at 77-78. On cross-examination, Detective Burkhimer acknowledged that it appeared as though

someone inside the house had fired a gun based on the fired cartridge casings on the ground and the large gun laying on the table, and at that point, Appellant was given his *Miranda* warnings before he asked him any questions about the incident. *Id*. at 81. Appellant was then recalled to the witness stand, and testified as to his belief that because police had concluded he was guilty, there was no reason to answer their questions. During its charge to the jury, the trial court stated:

> In this case, there was testimony introduced in the form of rebuttal with respect to [Appellant's] statements made to the detective. That was introduced for one purpose only, that was to evaluate the credibility of [Appellant's] testimony. You are not to infer anything negative or adverse to [Appellant] because he did not speak after being advised of his Miranda warnings. That's perfectly fine. Not a problem in the world. He has an absolute right not to speak. You cannot hold it against him.

*Id*. at 109-110. "Even an explicit reference to silence is not reversible error where it occurs in a context not likely to suggest to the jury that silence is the equivalent of a tacit admission of guilt." *Commonwealth v. Kuder*, 62 A.3d 1038, 1052 (Super. Ct. 2013) (citations omitted). Here, the trial court properly admitted the evidence as rebuttal of Appellant's own testimony, and the trial court assured that no untoward prejudice could attach when it specifically instructed the jury that it could only use the rebuttal testimony as impeachment and could not draw an adverse inference against Appellant.

Appellant next argues an abuse of discretion in the trial court's denial of his various requests for continuances. We find no merit in this argument.

- 12 -

Appellate review of a trial court's continuance decision is deferential. ***Commonwealth v. Norton***, 144 A.3d 139, 143 (Pa. Super. 2016). The grant or denial of a motion for a continuance is within the sound discretion of the trial court and will be reversed only upon a showing of abuse of discretion. ***Id***. We must therefore examine the reasons presented to the trial court for requesting a continuance, as well as the trial court's reasons for denying the request. ***Commonwealth v. Sandusky***, 77 A.3d 663, 672 (Pa. Super. 2013).

On Monday, December 11, 2017, just prior to the commencement of jury selection, Appellant's counsel requested a mental competency evaluation for Appellant. In its 1925(a) opinion, the trial court noted that Appellant's counsel indicated at that time that although a privately-appointed psychiatrist had previously found Appellant competent, an examination by a neutral, court-appointed psychiatrist was necessary because the Appellant had been "inconsistent" with counsel in the past. Trial Court 1925(a) Opinion at 10. The trial court noted further that the prosecutor alluded to reports that Appellant had been antagonistic and threatening in his manner toward his neighbors in the period up to and including a few weeks before trial, and that it was later reported that after Appellant had been released from custody following the underlying arrest, he had travelled to Florida where he was arrested for driving under the influence of drugs and alcohol, and at that time, a semi-automatic .9 millimeter firearm had been confiscated from the floor of his vehicle. ***Id***. The trial court conducted a lengthy competency colloquy,

- 13 -

concluding that Appellant demonstrated "zero difficulties…that would support any contention of lack of competency." Trial Court 1925(a) Opinion at 8. The trial court noted that during the colloquy, Appellant informed the trial court that he had been taking Wellbutrin, an antidepressant, as well as blood pressure medications, but that neither of them affected his ability to understand and comprehend what was taking place that day. 12/11/17 N.T. at 5-6; Trial Court 1925(a) Opinion at 9. The trial court further noted Appellant's assertion during the colloquy that the only mental illness he had ever been treated for was depression, and his acknowledgement of his awareness of all the charges pending against him. 12/11/17 N.T. at 7; Trial Court 1925(a) Opinion at 9. Nevertheless, the trial court granted the continuance request to facilitate the mental health examination, performed that day by the duly appointed psychiatrist. Appellant was found competent. However, on the following day, Tuesday, December 12, 2017, Appellant's counsel requested a continuance, citing dissatisfaction with the Commonwealth's decision to refuse a proffer of a negotiated guilty plea in exchange for a "time in sentence." The trial court denied this request, after confirming with Commonwealth counsel, with whom Appellant's counsel had been negotiating, that no non-trial disposition would be permissible. 12/12/17 N.T. at 5, 7, 9-10. The trial commenced, and after two days of testimony, Appellant's counsel again requested a continuance because Appellant was agitated and had reported hearing voices emanating from outside his apartment that kept him awake all night. 12/15/17 N.T. at 5. After

questioning Appellant, the trial court delayed trial, and directed a second psychiatric evaluation to be performed that day; the same psychiatrist who had conducted the pre-trial examination performed an examination;[5] the examination yielded another finding that Appellant was competent and not-commitable. *Id*. at 21. Prior to adjourning for the day, a Friday, and after the jury had been dismissed, the trial court invited Appellant's brother and sister, who were in court, to discuss Appellant's condition, given Appellant's report of having heard voices and concerns about his safety and the safety of others. It was determined that Appellant would stay over the weekend with his medical professional sister at her home and could thus eat, sleep, and take his medication for depression as prescribed. *Id*. at 50. On the following Monday, the trial court conducted an additional colloquy of Appellant, noting in its opinion that "he appeared candidly well rested[,] coherent and quite competent." Trial Court 1925(a) Opinion at 18. Prior to Appellant's decision to testify, on December 18, 2017, the trial court conducted an additional colloquy, and noted in its opinion that "Appellant demonstrated a full understanding of his rights and satisfaction and cooperation with his counsel." *Id*. The trial proceeded without further interruption through entry of verdict and scheduling of a sentencing hearing date. On February 20, 2018, prior to the commencement of the sentencing hearing, Appellant's counsel requested

---

[5] The trial court identified the doctor as, "Robert Stanton, M.D., who has duly [been] recognized as an experienced neutral forensic psychiatrist employed and authorized by the County of Philadelphia First Judicial District Mental Health Unit…" Trial Court 1925(a) Opinion at 17.

a continuance in order to obtain more letters from Appellant's family members and meet further with his reportedly agitated client, and answer his questions. 2/20/18 N.T. at 3. Two of Appellant's brothers, and two family friends were present to testify at the hearing. The trial court initially offered Appellant's counsel fifteen minutes to talk to his client, however, counsel declined the offer as an insufficient amount of time. *Id*. at 15. The trial court denied the request for continuance, noting that the mental health assessment and presentence investigative reports had been completed and there had been eight weeks in which to prepare for sentencing. *Id*. at 3, 13.

In its 1925(a) Opinion, the trial court asserted that Appellant failed to sustain his burden by proving by a preponderance of the evidence that Appellant was mentally incompetent at the time the respective continuance applications had been raised. Trial Court 1925(a) Opinion at 15. **See Commonwealth v. Ali**, 86 A.3d 173, 178 (Pa. 2014). The trial court documented the two continuances it granted to allow for competency examinations, its colloquies with Appellant, and trial counsel's agreement that his client appeared competent, concluding:

> This Court and counsel for both sides acknowledged advance review and of Appellant's multiple mental health and pre-sentence investigative evaluations that had been prepared following the guilty verdicts and prior to the sentencing date. Appellant had been duly deemed competent prior to trial, throughout the duration of his trial and prior to the sentencing hearings conducted by this Court and upon evaluation by neutral mental health professionals. Appellant's competency had been acknowledged by defense counsel. The sentencing hearing proceeded accordingly. In

short, no countervailing evidence had ever been submitted to support these due process claims.

Trial Court 1925(a) Opinion at 16-19. Our review of the record reveals ample support for the court's findings as to the reasons it asserted for denying Appellant's motions for continuances. Accordingly, we conclude that the trial court did not abuse its discretion in denying the two motions for continuances.

Finally, Appellant argues that the trial court abused its discretion when it sentenced the defendant to the statutory maximum sentence allowed, well above and beyond the aggravated range of the sentencing guidelines, and in excess of the sentence requested by the Commonwealth. Appellant's Brief at 37. Appellant is challenging the discretionary aspects of the trial court's sentence. We do not review such issues as a matter of right. "An appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence." *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1265 (Pa. Super. 2014). Specifically, Appellant must show that he (1) filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) properly preserved the issue at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. 720; (3) set forth a concise statement of reasons relied upon for the allowance of his appeal in his appellate brief pursuant to Pa.R.A.P. 2119(f); and (4) raised a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b). *Commonwealth v. Manivannan*, 186 A.3d 472 (Pa. Super. 2018). A substantial question exists, as to the appropriateness of a sentence, where a defendant sets forth a plausible

- 17 -

argument that a sentence violates a particular provision of the Sentencing Code, or is contrary to the fundamental norms underlying the sentencing scheme. **Commonwealth v. Mouzon**, 812 A.2d 617, 627 (Pa. 2002).

We conclude that Appellant has raised a substantial question. **Commonwealth v. Raven**, 97 A.3d 1244, 1253 (Pa. Super. 2014) (an excessive sentence claim – in conjunction with an assertion that the court failed to consider mitigating factors – raises a substantial question"). In addition, Appellant filed a timely notice of appeal and included a Pa.R.A.P. 2119(f) statement in his brief. However, in both his post-sentence motion and in his Rule 1925(b) Concise Statement of Errors Complained of on Appeal, the sole issue Appellant raised with regard to sentencing was the trial court's alleged failure to take into account any of the mitigation offered at the hearing, including its alleged failure to recognize his witnesses, lack of criminal history, mental health issues and good character. Motion for New Trial and To Modify Sentence, 2/28/18; Defendant's Concise Statement of Errors Complained of on Appeal.

Appellant's contentions that there is no record support to indicate he poses a danger to society, and that the trial court has double-counted factors already incorporated into the sentencing guidelines were not raised before the trial court or in his 1925(b) statement. Appellant has thus failed to preserve either of these issues in support of his discretionary aspects of sentence claims, and they are not subject to our review. **Commonwealth v. Smith**, 206 A.3d 551, 567 (Pa. Super. 2019) (sole claim raised in post-sentence

motion was failure to consider mitigating circumstances; claims on appeal that trial court failed to consider relevant sentencing criteria and considered impermissible factors waived where sentencing court denied opportunity to reconsider sentence based on appellant's argument); *Commonwealth v. Rush*, 959 A.2d 945, 949 (Pa. Super. 2008) (citation omitted) ("[f]or any claim that was required to be preserved, this Court cannot review a legal theory in support of that claim unless that particular legal theory was presented to the trial court[.]").    Accordingly, these claims are waived.

We proceed to address the merits of Appellant's argument that the trial court erred in failing to consider the extensive mitigation he offered at sentencing.  Appellant avers that the trial court disregarded his witnesses, his lack of criminal history, his mental health problems, and his good character. We find ample record evidence to establish that the trial court did not ignore the evidence offered in mitigation, but rather considered and evaluated it in full.  The trial court acknowledged that it heard the testimony of various members of Appellant's family; however, it found that these family members only reaffirmed its conclusion that as a result of his lengthy history of methamphetamine and alcohol abuse, which Appellant failed to acknowledge, and his mental health difficulties, Appellant demonstrated a lack of self-control.  The trial court referenced its consideration of multiple mental health evaluations and pre-sentencing investigative reports. Where a sentencing court has the benefit of a pre-sentencing investigation report, we can assume the sentencing court "was aware of relevant information regarding the

defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010) (citation omitted). The trial court addressed Appellant's limited criminal record, referring back to its comments at the conclusion of the sentencing hearing, wherein it acknowledged Appellant's prior record score of zero, but also recognized his "multiple encounters with the criminal justice system." Trial Court 1925(a) Opinion at 24; Sentencing Hearing, N.T. at 53-54. The trial court found Appellant to have demonstrated "an absolute lack of remorse and appreciation for the damage [he caused]" and noted his testimony and repeated view that he had been wrongfully accused and prosecuted. Trial Court 1925(a) Opinion at 24; Sentencing Hearing at 52. In sum, we find no merit to Appellant's claim that the trial court failed to consider mitigating factors before imposing its sentence.

Appellant contends generally that his sentence is excessive and unreasonable. We note that it is well-established that a sentencing court can impose a sentence that is the maximum period authorized by statute. *Commonwealth v. Saranchak*, 675 A.2d 268, 277 n.17 (Pa. 1996). The sentencing guidelines provide for minimum and not maximum sentences. *Commonwealth v. Boyer*, 856 A.2d 149, 153 (Pa. Super. 2004).

In reviewing a challenge to the sentencing court's discretion, we are cognizant of the following principles:

> We review the trial court's sentencing scheme for abuse of discretion. *Commonwealth v. Walls*, 592 Pa. 557, 926 A.2d 957, 961 (2007). "[A]n abuse of discretion is more than a

mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." ***Id.***

Section 9781(c) of the Sentencing Code directs this Court to vacate a sentence and remand to the sentencing court if "the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable." 42 Pa.C.S.A. § 9781(c)(3). Likewise, § 9781(d) governs our review of the record:

> (d) Review of record.—In reviewing the record the appellate court shall have regard for:
>
>> (1) The nature and circumstances of the offense and the history and characteristics of the defendant.
>>
>> (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.
>>
>> (3) The findings upon which the sentence was based.
>>
>> (4) The guidelines promulgated by the commission.

42 Pa.C.S.A. § 9781(d).

Our Supreme Court has addressed the § 9781(c)(3) "unreasonable" inquiry as follows:

> What makes a sentence "unreasonable" is not defined in the statute. Generally speaking, "unreasonable" commonly connotes a decision that is "irrational" or "not guided by sound judgment." The Random House Dictionary of the English Language, 2084 (2nd ed. 1987); ***see*** 1 Pa.C.S. § 1903 (words to be construed according to their common and approved usage). While a general understanding of unreasonableness is helpful, in this context, it is apparent that the General Assembly has intended the concept of

unreasonableness to be a fluid one, as exemplified by the four factors set forth in Section 9781(d) to be considered in making this determination. Indeed, based upon the very factors set out in Section 9781(d), it is clear that the General Assembly intended the concept of unreasonableness to be inherently a circumstance-dependent concept that is flexible in understanding and lacking precise definition.

[W]e decline to fashion any concrete rules as to the unreasonableness inquiry for a sentence that falls outside of applicable guidelines under Section 9781(c)(3). We are of the view, however, that the Legislature intended that considerations found in Section 9721 inform appellate review for unreasonableness. That is, while a sentence may be found to be unreasonable after review of Section 9781(d)'s four statutory factors, in addition a sentence may also be unreasonable if the appellate court finds that the sentence was imposed without express or implicit consideration by the sentencing court of the general standards applicable to sentencing found in Section 9721, i.e., the protection of the public; the gravity of the offense in relation to the impact on the victim and the community; and the rehabilitative needs of the defendant. 42 Pa.C.S. § 9721(b). Moreover, even though the unreasonableness inquiry lacks precise boundaries, we are confident that rejection of a sentencing court's imposition of sentence on unreasonableness grounds would occur infrequently, whether the sentence is above or below the guideline ranges, especially when the unreasonableness inquiry is conducted using the proper standard of review.

*Walls*, 926 A.2d at 963–64 (some citation omitted).

***Commonwealth v. Smith***, 206 A.3d at 567-568.

Here, the trial court specifically referenced its consideration of the sentencing guidelines promulgated by the Pennsylvania Commission on

Sentencing, and noted its measurement of the pre-sentence investigative reports and the multiple mental health evaluations. Trial Court 1925(a) Opinion at 24-25. The trial court expressly stated on the record its consideration of the nature and gravity of the offenses and their impact on the community:

> These charges do not remotely identify the amount of danger that you pose. The discharging of a firearm back in the day, frankly, was meant for someone who fired into an occupied structure just once. But, sir, you used an assault weapon to fire through the walls, furniture, anything that was in the way and outside into the community in an unbelievably reckless manner. I don't think that to date you care about the damage that you would have done, and I think that you present a high risk that you would do it again and I am not going to have that on my watch, to the extent possible.

Sentencing Hearing N.T. at 54-55. The trial court found significant Appellant's inability to accept responsibility or to express any remorse for his actions,[6] and expressed its judgment that Appellant posed a "clear and present danger to our community," as justification for imposition of the sentence as well as the application of relevant rehabilitative conditions. Trial Court 1925(a) Opinion at 25. The trial court ably addressed the section 9721(b) factors, including the examination of public protection, the gravity of the offense and

---

[6] Appellant exercised his right to allocution at the sentencing hearing, before the trial court sentenced him. He stated his belief that he was "a victim here," and that "the DA's case made me out to be a criminal, which I'm not…[a]nd you know, as far as these people in the neighborhood complaining about my actions and behaviors, I think that's all fabricated, you know, to complement the prosecution." Sentencing Hearing, N.T. at 50.

Appellant's rehabilitative needs. While we recognize the severity of the sentence here imposed, we are ever mindful that "[w]hen reviewing sentencing matters, this Court must accord the sentencing court great weight as it is in the best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime." *Commonwealth v. Ventura*, 975 A.2d 1128, 1134 (Pa. Super. 2009). Upon careful review of the record, including the transcripts of testimony from both the six-day trial and the sentencing hearing, we find that the sentence imposed was not manifestly unreasonable, and the trial court thus acted within its discretion in its imposition.

Appellant's issues merit no relief.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/3/20