J-A07026-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                 :            PENNSYLVANIA
                                 :
       v.                          :
                                   :
                                   :
DEBORAH ANN STEPHENS        :
                                   :
          Appellant           :   No. 658 MDA 2023

Appeal from the PCRA Order Entered April 6, 2023
In the Court of Common Pleas of Adams County
Criminal Division at No(s): CP-01-CR-0001094-2018

BEFORE: STABILE, J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY SULLIVAN, J.:                **FILED MAY 15, 2026**

Deborah Ann Stephens ("Stephens") appeals from the order dismissing her first, counseled petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1] After careful review, we determine trial counsel, Attorney Steve Rice ("Attorney Rice"), was ineffective for failing to ensure a knowing, intelligent, and voluntary guilty plea. Accordingly, we reverse, vacate the judgment of sentence, and remand for further proceedings consistent with this memorandum.

After two adverse motion *in limine* rulings prior to trial, Stephens entered a conditional, open guilty plea to third-degree murder for hitting her husband, James ("James" or "victim"), at least thirty-six times with a baseball

_____

[*] Former Justice specially assigned to the Superior Court.

[1] ***See*** 42 Pa.C.S.A. §§ 9541-9546.

bat, causing his death. ***See Commonwealth v. Stephens***, 249 A.3d 1168 (Pa. Super. 2021) (unpublished memorandum, at \*1).

The facts relevant to the guilty plea are as follows. The Commonwealth charged Stephens with first-degree and third-degree murder. Prior to trial, Stephens filed a motion *in limine* to preclude evidence of the text message James sent their son concerning her alleged threat of violence.[2] The trial court denied this motion. In August 2019, the Commonwealth filed a motion *in limine* seeking to preclude evidence of James's marital infidelity. The trial court granted the motion as to many of the communications between James and his paramour but stated evidence close in time to the date of the murder might be admissible to show provocation. ***See*** Order, 9/23/19 at 1 (unnumbered). Attorney Rice did not file a motion *in limine* to admit evidence of James's decades-long physical and psychological abuse of Stephens, despite the significant evidence of that abuse as detailed *infra*, which failed to establish pre-trial a factual basis for a self-defense claim namely battered

---

[2] Nine days before the victim's death, the victim sent a text message to their son wherein he claimed Stephens had threatened to kill him with a baseball bat because he was having an affair, the text message was not sent or received by Stephens. ***See Commonwealth v. Stephens***, 249 A.3d 1168 (Pa. Super. 2021) (unpublished memorandum, at \*1).

woman's syndrome.  ***See e.g. Commonwealth v. Otero-Velez***, 341 A.3d 67, *3 (Pa. Super. 2025) (unpublished memorandum).[3]

In October 2019, following the trial court's unfavorable *in limine* rulings, Stephens entered a "conditional" open guilty plea to third-degree murder, which limited to Stephens to one issue on direct appeal, namely whether the text messages regarding the victim's infidelity were erroneously precluded. As a result, Stephens was barred from bringing any other challenge on direct appeal, including other evidentiary rulings and even the discretionary aspects of the sentence.  ***See*** N.T. Guilty Plea, 10/30/19, at 1-12; Written Guilty Plea Colloquy, 10/30/19, at 1-11 (unnumbered).

The first ten pages of the written guilty plea colloquy appear to be the standard form written guilty plea colloquy where Stephens initialed and signed all of the rights she was waiving in exchange for a plea.  The colloquy included the usual information that Stephens could file a post-trial motion and appeal on the basis that her plea was not voluntary and/or seek to modify her sentence.  ***See id***. at 9 (unnumbered).  However, attached to the standard colloquy is a single typewritten sheet of paper that appears to be added by counsel, and is unsigned, undated, and with no initials and is obviously not a part of the standard written colloquy.  ***See id.*** at 11 (unnumbered) ("page

---

[3] The information of long-term physical and psychological abuse was not mentioned until sentencing on January 3, 2020.  Sentencing 1/16/2020, at 6, 17, 19.

11"). This unsigned, undated sheet bearing no initials (contrary to the other pages of the colloquy) went to the core terms of the "conditional" plea including Stephens's inability to challenge her sentence. *See id*. ("If the [c]ourt's ruling is upheld, the [o]rder of sentence will stand."); *see also* N.T. Guilty Plea, 10/30/19, at 3. Furthermore, the only place where the term "conditional" appeared in the standard portion of the written colloquy was on the cover page, where it was hand-written and squeezed between the words "Guilty" and "to", this handwriting is not initialed or dated. *Id.* at 1 (unnumbered). The non-standard attachment that went to the core of the conditional portion of the plea was likewise not discussed at all with Stephens by the plea court during the oral colloquy.

Turning to the oral colloquy conducted on October 30, 2019, although the written colloquy was handed to the court for review, the plea court did not review it in any depth with Stephens during the oral colloquy. The court asked if she read it, initialed it, and signed it, but little else. *Id.* at 4. The word "conditional" is stated six times during the colloquy but used only once by the plea court and not in the context of what a conditional plea is or the specific limitations thereof. In fact, during the oral colloquy no one put forth any explanation of what the term "conditional" meant to Stephens, if she had even seen page 11, or how it limited her trial and appeal rights.

It is obvious from the review of the testimony that Stephens did not understand the limitations of the conditional plea in the context of giving up

her right to a trial. During the oral guilty plea colloquy, the following exchange

occurred between Stephens and the trial court:

> [The trial court]: You are presumed to be innocent. The Commonwealth bears the burden of proving guilt beyond a reasonable doubt. You're entitled to a jury trial, but if you plead guilty today[,] you're giving up your right to have that trial; do you understand that?
>
> [Stephens]: *For that much of it, but I can appeal it?*
>
> [The trial court]: You can appeal.
>
> [Stephens]: Okay. Yes, sir.
>
> [The trial court]: But you're giving up your right to have a trial in this case; do you understand that?
>
> [Stephens]: *For this time, yes.*

*Id*. at 4-5 (emphasis added). Although Stephens's two non-responsive

answers suggested she did not understand the rights she permanently

surrendered by pleading guilty, and despite these unclear responses that

indicate she thought she would get a trial at some point, Attorney Rice did not

seek to clarify Stephens's confusion with any follow up questions to clarify her

understanding or ask the court to do so even though her answers were not

responsive or clear. The trial court also failed to discuss Stephens's post-

sentence or appellate rights, and Attorney Rice did not ask the court to do so.

*See id*. at 1-12.

These non-responsive answers, however, did not go unnoticed by either

counsel. In fact, later in the oral colloquy the Commonwealth, presumably to

protect the record, asked the plea court to go over the written colloquy in

detail to make sure "she read it and understood everything." *Id.* at 11. The Commonwealth's language is telling and clearly reveals a concern about Stephens's understanding of the conditional plea. The Commonwealth indicates "given the way this unfolded, I don't recall the Court actually going over the written colloquy with the Defendant . . ." *Id.* The trial court stated, incorrectly and without defense objection, that it had done so. *See id*.

The record is clear that Attorney Rice was also wary of Stephens's responses as he followed up with a similarly concerning request, "would the Court be willing to entertain at the time of sentencing at least being a little more particular and in a way that is consistent with Attorney Sinnett's summary . . . just so . . . [when] Ms. Stephens does appeal there isn't an issue about what the condition actually was?" The plea court again responded that it did read it from the draft colloquy. *Id.* It is clear from both attorneys' requests that it was not the reading they were worried about, it was the understanding that concerned them. The plea court did not follow up with Stephens after their respective requests.

Sentencing took place in January 2020.[4] At sentencing, it was again clear that Stephens was not aware she had been precluded from taking her case to trial. When she spoke at sentencing to the court, she indicated "thank

---

[4] The record reflects that Stephens referred to sentencing as a "sentencing trial." N.T. Sentencing, 1/16/2020, at 16.

you for having my sentencing trial today," and "Thank you for having this trial today." N.T. Sentencing, 1/16/2020, at 16-17.

The trial court ordered a pre-sentence investigation report ("PSI"), which by statute is intended to inform the court of the circumstances of the offense and the defendant's character to aid in sentencing. *See* Pa.R.Crim.P. 702(A)(3). The trial court did not order, nor did Attorney Rice ask for any psychological evaluations pursuant to Rule 702.[5] The PSI in this case consisted solely of a single "Face Sheet" of basic biographical data and a letter the arresting officer wrote offering his opinion that Stephens should receive the statutory maximum sentence. *See* PSI, 12/2/19, at 1-2 (unnumbered).[6] The PSI contains no interviews with other relatives, friends, or even her pastor all of whom spoke at sentencing to understand "the circumstances of the offense and the character of the defendant sufficient to assist the judge in determining sentence." Pa.R.Crim.P. 702 (a)(3).

---

[5] Although Rule 702 does not require psychological evaluations, it is common in murder cases to request them at sentencing, especially given the facts involved here where you have a criminal defendant that has no prior record, is indicating she "lost it" and struck her husband of many years with a baseball bat multiple times.

[6] Although Pa.R.Crim.P. 702(A)(4) allows for the inclusion of a victim impact statement, nothing in Rule 702 allows the admission of the investigating officer's *opinion* about a defendant's alleged lack of remorse or the officer's sentencing recommendation. Notwithstanding the exclusion of necessary information from the PSI and the inclusion of inadmissible material, Attorney Rice failed to object to the deficiency of the PSI.

At sentencing, the Commonwealth offered the arresting officer's sentencing recommendation and argued, contrary to Stephens's plea to third-degree murder, "it's obvious this was an intentional killing. . ... [E]vidence of intent . . . I think is without question exist[ed] here." N.T. Sentencing, 1/16/2020, at 3-4. Further, the Commonwealth falsely asserted Stephens had told her son, James "Jimmy" Stephens, she was going to hit James in the head with a baseball bat. *See id*. at 4.[7] The Commonwealth also affirmatively declared, "[T]here is no evidence of any history of abuse in this particular relationship," and asserted Stephens committed any violence that occured in the marriage, although, to be clear, Attorney Rice failed to make any reference to long-term physical and mental abuse until sentencing. *See id*. at 5.

Attorney Rice offered the following account of the killing. On that day, James came out of the bathroom naked, threw a pair of excrement-smeared pants at Stephens, and an argument ensued. *See id*. at 14. Stephens destroyed a picture of James's mistress Alexandra Liam, a woman he met online, whose photograph James had displayed in their home.[8] James shoved

---

[7] In fact, it is the victim that made this assertion in a text to his son, not the defendant. The Commonwealth was well aware of this important distinction as they argued a motion *in limine* regarding this text message.

[8] Stephens's and James's son, Jimmy, testified that in the months before the killing, James told Stephens he was involved with Liam, and taunted her about Liam's sexual attributes. *See* N.T., Sentencing, 1/16/20, at 10-14.

Stephens.  *See id*.  Stephens then grabbed a baseball bat and hit the victim repeatedly, killing him.  *See id*. at 14-15.

For the first time at sentencing, Attorney Rice presented evidence James had physically and psychologically abused Stephens for over forty years during their marriage.  Jimmy Stephens testified to Stephens's good character and stated James had been abusive to Stephens, but she chose to keep silent and preserve the family unit to her own detriment.  *See id*. at 18-19.  Jimmy also described James's psychological abuse of Stephens, and told the court, "[T]here's so much to this whole story that people don't know," and "[T]here was a lot that led up to [the killing] that made her[,] I think[,] just snap.  I mean, I'm sorry, you can only take so much."  *See id*. at 19-20.  For the first time at sentencing, Attorney Rice introduced letters and testimony from family members and friends showing James had abused Stephens.  *See* N.T. Sentencing, 1/16/20, at 8, 14; Defense Exhibit 4, Sentencing.  Attorney Rice also introduced medical records from an event *approximately one week before the killing* when Stephens underwent treatment and testing at Gettysburg Hospital following James's assault of her.  *See* Defense Exhibit 4B.  In her allocution, Stephens apologized to James's friends and family.  She referenced the lengthy history of physical and psychological abuse James had inflicted on her and explained she "snapped" on the day of the killing.  N.T. Sentencing, 1/16/20, at 17.

Knowing Stephens pled to third-degree murder, the sentencing court specifically found, without a defense objection, "significant evidence that suggested this was a premeditated and intentional killing," *id*. at 21, even though third-degree murder involves a non-intentional killing. ***See Commonwealth v. Geiger***, 944 A.2d 85, 90 (Pa. Super. 2008). Contrary to the elements of the crime to which Stephens pled, the court repeatedly, and at length, characterized the killing as premeditated murder, referring to "the intent of [Stephens] to commit this killing," ***see*** N.T. Sentencing, 1/16/20, at 22, and asserting Stephens "carried out a killing . . . in a premeditated fashion with the intent to kill," ***see id***. at 23. The court also made extensive reference to the hearsay evidence of James's text to Jimmy about Stephens's alleged threats to hit him with a baseball bat. ***See id***. at 22-23 (referring at length to James's text to Jimmy as both predictive of the killing and relevant to rebut a possible heat of passion defense, in combination with evidence Stephens had known from a period of time about James's affair and had a "cooling off" period).

The court then went on to diminish and mischaracterize James's abuse as largely confined to social media:

> It's unfortunate that we live in a society where people can be mean, disrespectful, discourteous and downright hateful in [sic] times on social media and on other platforms for whatever reason, but that's the society that we live in. Society cannot condone taking matters into our own hands because you don't like the way somebody has been acting toward you on social media and comments made to you and beat them to death striking them

dozens of times with a baseball bat. Society simply can't tolerate that and won't tolerate that.

*Id*. at 22-23.

On the other hand, the court also faulted Attorney Rice for not raising evidence of James's abuse of Stephens before sentencing, stating, "[the] [d]efense had an opportunity to raise a lot of this prior to today, [and] for various reasons declined to do so. It was presented for the first time today." *Id*. at 26. The court concluded evidence of James's abuse was not only presented belatedly but constituted "character assassination," and expressed its "umbrage" that James had "no chance to defend himself. . .." *See id*. at 26-27. The trial court then imposed a statutory maximum sentence of twenty to forty years in prison on Stephens, who was in her mid-sixties.

On direct appeal, in accordance with the terms of the plea agreement, Stephens was limited to challenging only the preclusion of evidence of marital infidelity prior to the date of the killing, arguing its exclusion prevented her from raising a heat of passion defense. *See Commonwealth v. Stephens*, 249 A.3d 1168 (unpublished memorandum, at *3). Relying on settled law, and long-standing precedent, this Court explained that a heat of passion defense could only succeed if the victim was uncontrollably compelled by passion *at the time of the murder*—and that a killing will not be deemed to have occurred under the heat of passion where there was sufficient time for cooling off after provocation. *Id*. at *4 (emphasis in original, internal quotation marks and citations omitted). In rejecting Stephens's appellate

claim outright, this Court explicitly noted that evidence of long-standing abuse (which Attorney Rice possessed but did not introduce until sentencing) actually would have supported a heat of passion defense:

> This is not a case where Stephens proffered a theory of self-defense, or one in which the victim had physically and psychologically abused her for years leading up to his death. ***In such a case, we agree that the prior history of Stephens'[s] marital discord with the victim might be relevant to establish the quantum of provocation needed to prove such a heat of passion defense.***

***See Stephens*** at *4-5 (emphasis added).[9]

In August 2021, the Pennsylvania Supreme Court denied Stephens's petition for leave to appeal. ***See Commonwealth v. Stephens***, 261 A.3d 1031 (Pa. 2021).

In May 2022, Stephens filed a timely *pro se* PCRA petition.[10] The PCRA court appointed counsel, Attorney Paul Royer ("Attorney Royer"), who filed an amended PCRA petition in November 2022.[11] The PCRA court held an

---

[9] Although not relevant to the voluntariness of a plea, Attorney Rice clearly had information that Stephens suffered years of physical and psychological abuse at the hands of her husband, but he sat on it until the day of sentencing. A cursory review of Pennsylvania case law would have revealed the ability to argue heat of passion based on the grounds of long-term abuse.

[10] While the PCRA petition is entitled "Counseled Petition," it is not signed by an attorney and Stephens states she is proceeding *pro se*. ***See*** PCRA Petition, 5/27/22, at 1, 4.

[11] Stephens's *pro se* petition included a claim that Attorney Rice was ineffective at sentencing. ***See*** PCRA Petition , 5/27/22, at 3. Attorney Royer did not include this claim in the amended PCRA petition. ***See*** Amended PCRA
*(Footnote Continued Next Page)*

evidentiary hearing on the claim, at which Stephens testified she spoke with

Attorney Rice once or twice prior to the entry of the guilty plea. **See** N.T.,

_____

Petition, 11/1/22, at 1-7 (unnumbered). For reasons which are not apparent, in December 2022, Attorney Royer filed a **Turner**/**Finley** letter explaining his reasons for withdrawing this individual claim. **See Turner**/**Finley** Letter, 12/16/22, at 1-7 (unnumbered).

Although a defendant cannot compel counsel to raise issues on direct appeal counsel deems frivolous, **see Commonwealth v. Morrison**, 173 A.3d 286, 293 (Pa. Super. 2017), counsel may not file a "quasi-**Anders** brief" arguing certain issues are frivolous but others are meritorious. **See id**. In two unpublished memoranda, we have applied this rationale to **Turner**/**Finley** letters, holding counsel may not file a partial **Turner**/**Finley** letter, but must file either an amended PCRA or a motion to withdraw as counsel. **See Commonwealth v. Demora**, 313 A.3d 201 (Pa. Super. 2024) (unpublished memorandum at *10 n. 8); **Commonwealth v. Plummer**, 236 A.3d 1069 (Pa. Super. 2020) (unpublished memorandum at *6); **see also** Pa.R.A.P. 126(b) (unpublished non-precedential memoranda decision of Superior Court filed after May 1, 2019, may be cited for persuasive value). Thus, Attorney Royer should not have filed a **Turner**/**Finley** letter concerning what he believed to be a single, non-meritorious issue in Stephens's PCRA petition.

The PCRA court's response of issuing a **partial** Rule 907 notice, was equally problematic. **See** Order, 12/19/22, at 1 (unnumbered). That Rule 907 notice directed Stephens, a **represented** PCRA petitioner, to file a _pro se_ response if she objected to the dismissal without a hearing of her claim of counsel's ineffectiveness. Such a directive clearly sought a violation of our Supreme Court's prohibition of hybrid representation. **See Commonwealth v. Jette**, 23 A.3d 1032, 1036-37 (Pa. 2011).

Based on our review of the record, as discussed _infra_, we do not agree with the PCRA court that a claim of ineffective assistance at sentencing would be wholly meritless. We note, _inter alia_, Attorney Rice's failure to object to the sentencing court's explicit reliance on its belief that the murder was premeditated in sentencing Stephens, even though Stephens pled guilty to third-degree murder, which does not involve the intent to kill, and counsel's failure to object to the deficient PSI or the admission of the arresting officer's sentencing preference. However, because we conclude Attorney Rice was ineffective in inducing Stephens's guilty plea, we need not decide his ineffectiveness at sentencing.

- 13 -

PCRA Hearing, 1/23/23, at 5. Stephens repeatedly stated that when she pled guilty, she believed that after her plea a different court would determine her guilt, *see id*. at 6, and she "would get a hearing and that [she] would be allowed to present what happened up to the event and [she] would get [her] side of the story out." *Id*. at 5; *see also* 6, 9, 12, 14-15 (asserting her belief she would testify during the appeal). Stephens testified Attorney Rice never talked to her about a "conditional" plea, and when asked to explain what such a plea entailed or why trial counsel recommended it, was unable to do so. *See id*. at 5-6, 8. Stephens offered the unintelligible assertion Attorney Rice was appealing the case because "he couldn't defend me the way we were right now if we were that way. He said he had to do it in the higher court." *Id*. at 6. Stephens acknowledged signing the standard written guilty plea colloquy but did not remember seeing the appended last page which modified the colloquy and explained her plea's conditional nature. *See id*. at 7. Stephens did not recall Attorney Rice ever discussing which issues he would raise on appeal, the possibility of going to trial, or the possibility of a stipulated trial. *See id*. at 7-8. On cross-examination, Stephens explained she was unaware the document she filed in this case was a PCRA and did not recall writing it. *See id*. at 10, 17. Lastly, Stephens was unable to explain the difference between an appeal and a trial. *See id*. at 14-16.

In his testimony, Attorney Rice admitted he discussed the details of the conditional guilty plea more with Stephens's family than Stephens. *See id*.

at 25, 27, 33-34. Attorney Rice testified he followed this course because Stephens's "understanding of things is sometimes on a more simple level[;]" and her conception of the law was only "basic." *Id*. Although Attorney Rice testified he did not believe Stephens was incompetent,[12] he acknowledged she had a "more basic understanding of things" and that while he did the best he could to explain things to her, "there are limits to what you can achieve." *Id*. at 26. Attorney Rice admitted there were "concerns" about whether Stephens "was comfortable" with the guilty plea and did not disagree with Attorney Royer's characterization of Stephens's desire for a jury trial as "strong." *Id*. at 28, 37. Attorney Rice commented he doubted Stephens would be able to recount what was said in either the oral or written guilty plea colloquy.[13] *See id*. at 27. Attorney Rice could not remember if Stephens had ever sought to

---

[12] Notably, despite Stephens's incomprehension about the nature of the guilty plea expressed at the plea and in her PCRA testimony, there is no evidence Attorney Rice had Stephens examined by a psychologist or tested for dementia, Alzheimer's disease, or traumatic brain injury. Such a course would have been reasonable given Attorney Rice's low opinion of Stephens's intellectual capability, as well as Stephens's age, her statements that the victim had previously hit her in the head with objects, and the out-of-character nature of her actions.

[13] Attorney Rice testified "everything was explained to her in the colloquy." *Id*. at 37. However, as mentioned above, the trial court did not review the written colloquy with Stephens at the plea hearing despite the Commonwealth's urging, and the oral colloquy strongly suggests Stephens did not understand the nature of the plea or the rights she was surrendering by pleading guilty, as her PCRA testimony makes manifestly clear.

withdraw her guilty plea but stated even if she had requested to withdraw her guilty plea, he would not have permitted her to do so. ***See id***. at 27, 30-32.

Attorney Rice, who was called by the Commonwealth as a ***witness*** on Stephens's PCRA petition, testified the trial court's ruling barring evidence of James's infidelity "eviscerated" his entire trial strategy and he "didn't know what to do[.]" ***Id***. at 30; ***see also id***. at 26-30, 36, 38. Attorney Rice testified that the conditional plea was his idea. ***See id***. at 31-32. Attorney Rice noted he agreed as part of the conditional guilty plea that if the appeal failed, the sentence would stand. ***See id***. at 36. Attorney Rice could not and did not explain why he believed he had a chance of prevailing on an appeal of the court's ruling on the admissibility of earlier evidence of marital infidelity, why he did not file a motion *in limine* to admit evidence of James's longstanding abuse, or why he did not negotiate to preserve an appeal of the admission of James's text concerning prior threat of violence.[14] ***See id***. at 20-39.

In April 2023, the PCRA court issued an opinion denying Stephens's PCRA petition. This appeal followed.[15]

On appeal, Stephens raises two questions:

---

[14] Attorney Royer attempted to question Attorney Rice as to why he chose to only appeal the ruling on marital infidelity and not the ruling on the prior threat of violence. ***See id***. at 38. However, the Commonwealth objected to the testimony as outside the scope of its direct examination and the PCRA court sustained the objection. ***See id***.

[15] Stephens and the trial court complied with Pa.R.A.P. 1925.

I.      Whether the [PCRA] court erred in not finding that trial counsel was ineffective for advising [Stephens] to enter into a conditional plea agreement?

II.     Whether the [PCRA] court erred in not finding trial counsel ineffective for advising [Stephens] to enter into a conditional plea agreement that did not include an additional appellate issue concerning the trial court's ruling on the admissibility of text messages containing prior threats of violence?

Stephens's Brief at 6 (capitalization and punctuation regularized).

This Court's standard for reviewing the dismissal of PCRA relief is well-settled:

Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. We view the record in the light most favorable to the prevailing party in the PCRA court. We are bound by any credibility determinations made by the PCRA court where they are supported by the record. However, we review the PCRA court's legal conclusions *de novo*.

*Commonwealth v. Staton*, 184 A.3d 949, 954 (Pa. 2018) (citations and quotation marks omitted).

Both of Stephens's interrelated issues[16] challenge the effectiveness of guilty plea counsel. To prevail on a claim of ineffective assistance of counsel, an appellant must establish that:

(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different. If a claim fails under any required element . . . the court may dismiss

_____

[16] Because Stephens's issues are interrelated, we discuss them together.

- 17 -

on that basis. Counsel is presumed to be effective, and the burden of demonstrating ineffectiveness rests on the appellant.

***Commonwealth v. Johnson***, 236 A.3d 63, 68 (Pa. Super. 2020) (*en banc*) (citations omitted). A failure to satisfy any prong of the ineffectiveness test requires rejection of the claim. ***See Commonwealth v. Brown***, 196 A.3d 130, 151 (Pa. 2018)

"A criminal defendant has the right to effective counsel during a plea process as well as during trial." ***Commonwealth v. Rathfon***, 899 A.2d 365, 369 (Pa. Super. 2006) (citation omitted). Further, "[a]llegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief . . . if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea." ***Commonwealth v. Hickman***, 799 A.2d 136, 141 (Pa. Super. 2002) (citation omitted). Also, "[w]here the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends upon whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." ***Id***. (internal quotation marks and citations omitted). Where a defendant has pleaded guilty, to satisfy the prejudice requirement of the ineffectiveness test, he must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." ***Rathfon***, 899 A.2d at 370 (citation omitted). Where the record clearly shows the trial court conducted a thorough plea colloquy and the defendant understood his rights and the nature of the charges against him, the plea is voluntary. ***See Commonwealth v.***

*McCauley*, 797 A.2d 920, 922 (Pa. Super. 2001). In examining whether the defendant understood the nature and consequences of his plea, we look to the totality of the circumstances surrounding the plea. *See id*. At a minimum, the trial court must inquire into the following six areas:

(1)    Does the defendant understand the nature of the charges to which [s]he is pleading guilty?

(2)    Is there a factual basis for the plea?

(3)    Does the defendant understand that [s]he has a right to trial by jury?

(4)    Does the defendant understand that [s]he is presumed innocent until [s]he is found guilty?

(5)    Is the defendant aware of the permissible ranges of sentences and/or fines for the offenses charged?

(6)    Is the defendant aware that the judge is not bound by the terms of any plea agreement tendered unless the judge accepts such agreement?

*Id*. (citation omitted); *see also* Pa.R.Crim.P. 590, Comment.

However, a guilty plea is not a cursory, "check the boxes" formality. "The entry of a guilty plea is a protracted and comprehensive proceeding wherein the court is obliged to make a specific determination after extensive colloquy on the record that a plea is voluntarily and understandingly tendered." *Commonwealth v. Yeomans*, 24 A.3d 1044, 1047 (Pa. Super. 2011). Thus, "[i[n order for a guilty plea to be constitutionally valid, the guilty plea colloquy must affirmatively show that the defendant understood what the plea connoted and its consequences." *Id*. at 1046 (citation omitted).

- 19 -

Common sense dictates that where there is an uncommon complexity added to the standard plea bargain that precludes certain rights like the conditional plea in the instant matter, it is imperative the defendant understand not only what they are agreeing to but also what rights they are waiving as a result.

Further, our Supreme Court has long held that a guilty plea must be "the personal and voluntary decision of the accused[.]" *Commonwealth v. Forbes*, 299 A.2d 268, 271 (Pa. 1973). Our conclusion that Attorney Rice coerced Stephens into entering an unknowing and involuntary guilty plea is supported by Stephens's demonstrated limited understanding of her plea and buttressed by the inadequacies of the plea colloquies and Attorney Rice's failure to ameliorate those deficiencies. In a recent decision, *Commonwealth v. Bradley*, 326 A.3d 982, 987-88 (Pa. Super. 2024), direct appeal counseled filed an *Anders* brief and sought leave to withdraw because the only non-frivolous issues concerned ineffective assistance of counsel in the entry of a *nolo contendere* plea. *See id*. at 988. This Court denied counsel leave to withdraw, finding a colorable claim of ineffective assistance where plea counsel allowed the defendant to enter the plea despite knowing the defendant wished to raise a constitutional challenge to Pennsylvania's wiretap laws, and did not explain to defendant he was waiving that right by entering the plea. *See id*. at 987-88.

Stephens contends Attorney Rice was ineffective for allowing her to enter a conditional guilty plea. *See* Stephens's Brief at 11-18. Stephens

maintains her testimony at the PCRA hearing demonstrates she did not understand she was entering a conditional guilty plea. *See id*. at 12. To that end, Stephens highlights Attorney Rice's testimony at the PCRA hearing that her level of understanding was "simple." *Id*. Stephens notes she did not sign the appended page to the written plea colloquy, which was the only page that set forth the unusual conditions of the plea. *See id*. at 13. Moreover, Stephens argues Attorney Rice had no reasonable strategic basis for the conditional plea because the law on marital infidelity and heat of passion is long-settled and given this, the chances of succeeding on appeal were "slim-to-none."[17] *Id*. Moreover, Stephens claims an appellate challenge to the admissibility of James's text concerning Stephens's alleged threat presented a far better likelihood of success, and no reasonable basis existed for his failure to include this evidentiary ruling in the conditions. In this regard Stephens notes that in 2021, our Supreme Court decided **Commonwealth v. Fitzpatrick**, 255 A.3d 452 (Pa. 2021), which reversed the Superior Court decision relied upon by the trial court in admitting the threats of violence

---

[17] This point is particularly notable when juxtaposed with the *sua sponte dicta* in this Court's decision on direct appeal that suggested that were Stephens to have, "proffered a theory of self-defense, or one in which the victim had physically and psychologically abused her for years leading up to his death[, the court may have] . . . agree[d] that the prior history of Stephens['s] marital discord with the victim might be relevant to establish the quantum of provocation needed to prove such a heat of passion defense." **Stephens**, 261 A.3d 1031 *4.

- 21 -

emails under Pa.R.E. 803(3) concerning the victim's state of mind. *See* Stephens's Brief at 17.

In two brief opinions with no specific citations to the record, the PCRA court disagreed. The court held Stephens entered a knowing and voluntary plea after "lengthy pretrial preparation." PCRA Court Opinion, 4/6/23, at 2 (unnumbered). The PCRA court also held Attorney Royer failed to "articulate how Attorney Rice acted unreasonably[18] under the circumstances[.]" 1925(a) Opinion, 6/12/23, at 3. As discussed below, the PCRA court's opinion is unsupported by both the law and the factual record.

Our decision in this matter is informed by the relatively uncommon circumstances surrounding the guilty plea in the instant matter. The analysis warrants a detailed review at both the written and oral colloquy not only individually, but in combination with one another to determine whether Stephens's plea was knowing, intelligent, and voluntary.

First, we turn to Stephens's statements at the guilty plea hearing, sentencing, and the PCRA hearing, which support both Attorney Rice's and Attorney Royer's statements regarding her complete lack of familiarity with and understanding of the legal system, and her limited cognitive and

_____

[18] We believe the PCRA court intended to indicate that Attorney Rice had a reasonable basis for his actions or omissions, which is the standard for prong two of ineffective assistance of counsel. *See e.g.*, *Johnson*, 236 A.3d at 68. It is not a blanket "unreasonableness" standard; rather, it is whether a reasonable basis existed for counsel's actions/inactions.

intellectual ability. Attorney Rice described that in explaining to Stephens the process of the conditional plea "he did the best he could," but her limited cognitive ability caused Attorney Rice to consult mostly, by his own admission, with her family rather than with Stephens herself. **See** N.T., PCRA Hearing, 1/23/23, at 25, 27, 33-34.

Next, we turn to a record review, including the guilty plea hearing, sentencing, and the PCRA hearing, as stated *supra*, each hearing consistently shows that Stephens wanted to go to trial to tell her side of the story. **See** N.T. Guilty Plea, 10/30/19, at 4-5; N.T. Sentencing, 1/16/20, at 17, 19; N.T. PCRA Hearing, 1/23/23, at 5-7, 28, 37. The record also demonstrates Stephens's understanding of the legal system was minimal and she appeared to have limited intellectual capacity. **See** N.T. Guilty Plea, 10/30/2019, at 4-5; N.T. Sentencing, 1/16/2020, at 16; N.T. PCRA Hearing, 1/23/2023, at 5-10, 12, 14-17, 25-27, 33-34. Of particular concern to this Court are Stephens's non-responsive statements to the plea court that she was only pleading guilty and giving up her right to trial "for that much of it" and that she was giving up her right to a trial "for this time." N.T. Guilty Plea, 10/30/2019, at 4-5. Those statements clearly show Stephens did not understand the rights she permanently surrendered by entering into a conditional guilty plea and were entirely consistent with her PCRA testimony she was temporarily pleading guilty but would receive a trial after her appeal. **See** N.T. PCRA Hearing, 1/23/2023, at 5-6, 9, 12, 14-15. Even though it was

clear that these replies to the plea court's questions were almost nonsensical, the plea court did not pause to clarify the non-responsive statements, nor did Attorney Rice ask for clarification. It was apparent to the Commonwealth, however, because the record shows that the prosecutor asked for the plea court to go over the written colloquy line by line "given the way this [oral colloquy] unfolded." N.T. Guilty Plea, 10/30/19, at 11. However, in response to the prosecutor's request "to make sure she read it and understood everything" the plea court doubled down and insisted it had gone through the written colloquy in detail. *Id.*

Here, Stephens's non-responsive comments indicated she believed her guilty plea was temporary, yet neither Attorney Rice nor the trial court paused the colloquy to explain to Stephens this was not a temporary plea and that, unless the appeal was successful (something highly unlikely given our deferential standard of review of a trial court's evidentiary rulings and the weakness of the preserved appellate claim), she would not have a trial. Further, during the oral colloquy the trial court did not explain Stephens's post-sentence and appellate rights or tell her that because of the agreed conditions of this particular plea, she was effectively giving up her right to challenge both the voluntariness of the plea and the discretionary aspects of

her sentence.[19]  ***See*** N.T. Guilty Plea, 10/30/2019, at 3; Written Guilty Plea Colloquy, 10/30/19, at 9, 11 (unnumbered); N.T. PCRA Hearing, 1/23/2023, at 27, 30-32.

In combination with the actual written guilty plea colloquy, which contains an unsigned, uninitialed, non-standard attachment, which basically terminated her ability to appeal her sentence in any meaningful way there is little, if any, chance Stephens understood that she was pleading guilty to a charge and precluding herself from raising any legitimate issues on appeal.

Next, the plea court failed to review the written colloquy and Attorney Rice failed to challenge the trial court's assertion that it had already reviewed the written guilty plea colloquy with Stephens.  Had Attorney Rice done so, the court could have reviewed the written plea colloquy and addressed with Stephens the contradictions between the standard written guilty plea colloquy and the unsigned, undated conditions appended to it, as well as explored her ambiguous answers to the oral guilty plea colloquy.  ***See id***.

Stephens's lack of understanding of the meaning of a conditional guilty plea, her strong desire to go to trial, Attorney Rice's conditioning her guilty

---

[19] We are unable to discern any strategic basis for Attorney Rice's decision to agree to let whatever sentence the trial court imposed "stand," particularly in light of the Commonwealth's improper argument at sentencing that this was a pre-meditated killing consistent with first-degree murder, and the sentencing court's adoption of the Commonwealth's argument that despite a clear plea to third-degree murder, Stephens committed premeditated murder (first degree).

plea on an appeal that had no realistic possibility of success, and the failure of both Attorney Rice and the court to ensure Stephens clearly understood the consequences of the plea, demonstrate her plea was not knowing, intelligent, and voluntary and Attorney Rice was ineffective. *See Commonwealth v. Ramirez-Contreras*, 320 A.3d 756, 763-65 (Pa. Super. 2024) (holding this Court has "not hesitated to grant PCRA relief where counsel has misled a client during the plea process[;]" and granting PCRA relief and vacating the judgment of sentence where neither plea counsel nor the trial court sufficiently explained to the defendant that he could face deportation because of his guilty plea).

Moreover, our review of the record also demonstrates Attorney Rice had no reasonable strategic basis for his decisions to suggest a conditional guilty plea to solely preserve the infidelity text messages for appeal and not the texts regarding the alleged threat of violence, or to litigate pre-trial the admissibility of James's prior physical, psychological, and mental abuse of Stephens in support of a self-defense/heat of passion defense. Although Attorney Rice testified to his shock at the trial court's decision to exclude all evidence of prior infidelity except those events which occurred on the day of the murder, he never explained the basis for that shock. *See* N.T. PCRA Hearing, 1/23/2023, at 26-30, 36, 38. It is well-settled law in Pennsylvania that dated evidence of infidelity does not constitute sufficient provocation for

a heat of passion defense.[20] **See Commonwealth v. Mason**, 130 A.3d 601, 628-29 (Pa. 2015); **see also Stephens**, *supra* at *4. Because the law on the issue was settled, there was no reasonable basis for Attorney Rice's decision to not also raise the issue of the long-standing physical and psychological abuse Stephens, her son, and the couple's friends observed. As we opined on direct appeal, had Stephens raised the history of abuse in defending the Commonwealth's motion *in limine*, the evidence of the couple's tumultuous marriage, the alleged long-term abuse, and the infidelity would have been admissible based on a heat of passion defense. **See Stephens**, *supra* at *4.

Pennsylvania courts have long held counsel is ineffective for advising a defendant to plead guilty based on counsel's misunderstanding of the law. This Court has stated when counsel's advice is "based on an ignorance of relevant . . . law," the "advice was legally unsound and devoid of any reasonable basis designed to effectuate Appellant's interests." **Hickman**, 799 A.2d at 141. **See also Commonwealth v. Barndt**, 74 A.3d 185, 196 (Pa. 2013) (holding that "counsel's assistance is constitutionally ineffective when counsel misapprehends the consequences of a given plea and misleads his client accordingly about those consequences[.]"); **Commonwealth v.**

---

[20] Attorney Rice acknowledged at the PCRA hearing that absent evidence of the history of the parties' relationship and the months of taunting inflicted on Stephens by James, he did not believe that the evidence of the events of the morning of the murder was sufficient to show heat of passion. **See** N.T. PCRA Hearing, 1/23/2023, at 30, 35-36.

***Nelson***, 574 A.2d 1107, 1114-15 (Pa. Super. 1990) (affirming a trial court's decision to allow defendant to withdraw a guilty plea based upon ineffective assistance of counsel where counsel advised the defendant to plead guilty because of a confession without filing a motion to suppress or researching the issue of the lawfulness of the confession).

Further, Attorney Rice's actions appear at odds with his testimony at the PCRA hearing that he was concerned Stephens would be convicted of murder in the first degree and receive a life sentence. ***See*** N.T. PCRA Hearing, at 30, 36. Firstly, the Commonwealth's theory regarding premeditation had nothing to do with the issue of infidelity but rested squarely on the trial court's decision to admit the text message between the victim and his son (not Stephens), which contained hearsay statements regarding an alleged threat of violence allegedly made by Stephens. The court acknowledged its decision to admit the communications was based on a then-recent decision by this Court in ***Commonwealth v. Fitzpatrick***, 204 A.3d 527 (Pa. Super. 2019). ***See*** 1925(a) Opinion, 7/12/23, at 3. At the time of the entry of the conditional guilty plea, ***Fitzpatrick*** had been appealed, and the Supreme Court later ruled that a victim's statement of mind is not admissible under Pa.R.E. 803(3) to prove a defendant's guilt of a crime the victim predicted. ***See Fitzpatrick***, 255 A.3d at 483. Because the decision to admit the text message rested on far weaker legal grounds than the trial court's decision regarding the history of infidelity, and was central to premeditation – and Attorney Rice's expressed

concerns about a conviction for murder in the first degree – Attorney Rice lacked a reasonably strategic basis for failing to preserve this issue for appeal as part of his conditional guilty plea.[21]  As Attorney Rice admitted, Stephens received a *de facto* life sentence.  ***See*** N.T. PCRA Hearing, 1/23/2023, at 36.  Attorney Rice offered no explanation why he waived Stephens's right to challenge the discretionary aspects of sentence on appeal, did not clarify the non-responsive answers Stephens gave at her guilty plea, did not have her sign and initial the additional page of the written colloquy that clarified the additional conditions of the plea, did not offer the evidence regarding long-term abuse earlier in the proceedings, and failed to object to a clearly deficient PSI, misstatements by the Commonwealth at sentencing, and the trial court's consideration of premeditation in imposing sentence.  Rather, it appears to this Court that, as Attorney Rice testified, he devised the idea of a conditional guilty plea because he was surprised by a ruling that was squarely in-line with well-established caselaw and unprepared to go to trial.  ***See*** N.T. PCRA Hearing, 1/23/2023, at 26-30, 36, 38.  Thus, we conclude Attorney Rice's

_____

[21] As noted above, our review of this issue is hampered by the PCRA court's inexplicable decision to disallow questioning on this issue.  Attorney Royer clearly raised the claim that counsel had appealed the wrong issue in the amended PCRA petition.  The issue was of extreme importance to Stephens's claim of ineffective assistance of plea counsel.  To disallow all testimony about it on the grounds that it was beyond the scope of the Commonwealth's direct examination while ultimately holding that PCRA counsel had not met the burden of proof runs perilously close to constituting a violation of Stephens's due process rights.

advice was unsound and not designed to advance his client's interests. **See Barndt**, *supra*; **Hickman,** *supra*; **Nelson**, *supra*.

Lastly, the record clearly demonstrates that, but for Attorney Rice's advice, Stephens would not have pleaded guilty. Her testimony throughout these proceedings, as well as the testimony of her family was that she wanted to go to trial and have a chance to present her story. Thus, we conclude Attorney Rice's actions prejudiced Stephens. **See Ramirez-Contreras**, *supra* at 766 ("concluding that where defendant testified he only pleaded guilty because of counsel's incorrect advice his plea was involuntary and unknowing).

In conclusion, we find the PCRA court erred when it denied Stephens's claim that plea counsel's ineffective assistance invalidated her guilty plea. We reverse the order denying Stephens's PCRA petition, vacate the judgment of sentence, and remand this case so that Stephens may withdraw her guilty plea.

Order reversed. Judgment of sentence vacated. Case remanded for further proceedings consistent with this decision. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 05/15/2026